## TEXAS BOARD OF PARDONS & PAROLES, Petitioner,

v.

## Chuck MILLER, Judge, Respondent.

No. 62121.

Court of Criminal Appeals of Texas, En Banc.

Nov. 28, 1979.

Mark White, Atty. Gen. of Texas, John W. Fainter, Jr., Ted L. Hartley, W. Barton Boling, Joe Chumlea and Renea Hicks, Asst. Attys. Gen., Dallas, for petitioner.

Charles E. Miller Jr., Roark M. Reed, Dallas, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

Petitioner, the Texas Board of Pardons and Paroles (hereinafter referred to as the Board), filed this petition for a writ of mandamus pursuant to Article 5, Section 5, Texas Constitution, to order a trial judge not to deliver a file of a parolee to his counsel in a case involving a different offense from that of which he was originally convicted. The requested relief is granted in part and denied in part.

On June 20, 1979, attorneys for the defendant, in a case styled The State of Texas vs. Dwight Sennert Barnes, in the County Criminal Court No. 7 of Dallas County, had issued a subpoena duces tecum to the Board for all files and letters concerning Barnes and all letters written to the Board by Melinda Barnes, the defendant's ex-wife. The Board then filed a motion to quash the subpoena duces tecum claiming a statutory privilege under Article 42.12, Section 27, V.A.C.C.P., which provides:

"All information obtained in connection with inmates of the Texas Department of Corrections subject to parole, release to mandatory supervision, or executive clemency or individuals who may be on

mandatory supervision or parole and under the supervision of the division, or persons directly identified in any proposed plan of release for a prisoner, shall be confidential and privileged information and shall not be subject to public inspection; provided, however, that all such information shall be available to the Governor and the Board of Pardons and Paroles upon request. It is further provided, that statistical and general information respecting the parole and mandatory supervision program and system, including the names of paroled prisoners, prisoners released to mandatory supervision, and date recorded in connection with parole and mandatory supervision services, shall be subject to public inspection at any reasonable time."

Barnes had been charged with making obscene telephone calls to his former wife, Melinda Barnes.

At a pre-trial hearing, Barnes' attorneys stated that the purpose of the subpoenaed documents was to show the bias and prejudice of the complaining witness, Melinda Barnes. It was stipulated that neither side knew the contents of those letters. The trial judge, the respondent here, overruled the motion to quash and ordered the documents to be tendered to defense counsel. At the request of the Board, a motion to stay the order was granted by the trial court pending the application for a writ of mandamus in this Court. This Court issued an order setting this case for submission and ordering all enforcement proceedings on the court's order stayed pending disposition of the case.

## I.

The initial question is whether the writ of mandamus is a proper remedy for this type of case. The recent amendments to Article 5, Section 5, of the Texas Constitution give this Court jurisdiction to issue, among other things, writs of mandamus in all criminal matters. See *Thomas v. Stevenson*, 561 S.W.2d 845 (Tex.Cr.App.1978). To justify this extraordinary remedy, the application for a writ of mandamus must

meet a two-fold test. First, there must be no other adequate legal remedy available to the petitioner. Second, the relief sought must be in the nature of a ministerial act by the respondent, as opposed to a discretionary one. *See generally, Ordunez v. Bean*, 579 S.W.2d 911 (Tex.Cr.App.1979); *State ex rel. Vance v. Routt*, 579 S.W.2d 903 (Tex.Cr.App.1978).

The Board's motion to stay the order in the trial court is as follows:

"The issues raised by the service of a subpoena duces tecum upon the Board in the context of a criminal trial and the Board's assertion of the statutory privilege asserted in [Section] 27 are such that any legal decision affecting the privilege is not susceptible to meaningful review through the normal criminal appellate processes. Therefore, in order to obtain a meaningful review of the issue, it is necessary for the Board, when its motion to quash a subpoena duces tecum has been denied, to seek the extraordinary remedy of a writ of [mandamus] so that the issue may be finally determined."

The first requirement is met in this case.

As for the second requirement, we hold that the remedy is ministerial in regard to most of the file and is properly the subject of a writ of mandamus.

The conflict is between the Sixth Amendment right of Dwight Barnes to confront his accusers and the Board's statutory privilege necessary to preserve confidentiality and to encourage the frank and candid discussion necessary to its function.

This Court has long recognized the fundamental importance of a defendant's right to adequately cross-examine a witness. In *Spain v. State*, 585 S.W.2d 705 (Tex.Cr.App.1979), we quoted from *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931):

"It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportu-

nity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them."

In *Spain*, we reversed because of the trial court's failure to allow the defendant to cross-examine a State's witness as to his bias, prejudice or motive to testify.

In *Castro v. State*, 562 S.W.2d 252 (Tex. Cr.App.1978), the trial court refused, as in *Spain*, to allow defense counsel to cross-examine for bias or prejudice and the Court stated that great latitude should be allowed a defendant in showing any fact that might go to bias or motive. There can be no collateral or immaterial motive.

In *Jackson v. State*, 482 S.W.2d 864 (Tex. Cr.App.1972), this Court held that even though a witness admitted bias against the defendant and wanted her convicted, she was entitled to prove particular acts of the witness to show the extent of such bias.

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court of the United States held that a state statutory privilege prohibiting disclosure of a juvenile's probationary status must give way to a defendant's Sixth Amendment right of confrontation. To deny a defendant the opportunity to show the bias or prejudice of a witness is a "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." It should be noted that in *Davis*, the State did not assert a need for confidentiality but merely the need to protect the anonymity of a juvenile offender for rehabilitation purposes.

The need for confidentiality is presented here. The Board contends that many documents are submitted by people who have relied on the confidential status of the files and that to require disclosure would make it more difficult to receive candid appraisals from those concerned with a particular parolee's status. The Board asserts that the loss of this candor would result in imprecise parole determinations and could endanger citizens in the parolee's community.

The Board also argues that the statute, Article 42.12, Section 27, V.A.C.C.P., admits of no exceptions. Had the Legislature intended an exception, they could have created one as they did with the clergyman-penitent privilege, Article 3715a, V.A.C.S.,[1] and the juvenile court records privilege with its delineated exceptions, Article 2338–1, Section 15, V.A.C.S.[2]

This argument, however, would require a statutory enactment to take precedence over a constitutional right. Such has never been the case. In *Davis v. Alaska*, supra, the statutory juvenile records privilege gave way to a defendant's Sixth Amendment right of confrontation. *In Ex parte Turner*, 545 S.W.2d 470 (Tex.Cr.App.1970), this Court held that:

"Common law and statutory privileges, not of constitutional dimension, must yield when in direct conflict with those constitutional rights essential to the concept of Due Process within the Fourteenth Amendment to the Constitution of the United States and further guaranteed in this State by Art. I, Sec. 19 (Due Process) and Art. I, Sec. 10 (Confrontation and Compulsory Process for Witnesses) of the Texas Constitution."

In *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the United States, represented by its special prosecutor, filed for a subpoena duces tecum against President Nixon in order to secure the tape recordings of certain conversations between the President and his

---

1. Article 3715a, V.A.C.S., reads, in part:
   ". . . provided however, that the presiding judge in any trial may compel such disclosure if in his opinion the same is necessary to a proper administration of justice."

2. Article 2338–1, Section 15, V.A.C.S., states:
   "Juvenile Court records shall not be inspected by persons other than probation offi-

cers or other officers of the Juvenile Court unless otherwise directed by the court but information on juvenile cases in the grade of felony shall be made available by the court to the agencies responsible for the implementation of the federal Omnibus Crime Control and Safe Streets Act of 1968, Pub. Law 90–351 (June 19, 1968)."

closest advisors. The President raised the issue of executive privilege, stating that the privilege was necessary to encourage frank and candid discussions among public figures who would have no fear of public disclosure.

The Supreme Court labeled this assertion as no more than a "generalized claim of the public interest in confidentiality." Executive privilege is not an absolute but a presumptive privilege that must be balanced in light of a defendant's Sixth Amendment right of confrontation and the orderly administration of justice. Though any privilege exists to protect necessary interests, the courts have a "manifest duty" to vindicate a defendant's Sixth Amendment right of confrontation. "To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or the defense." *United States v. Nixon*, supra, at 709, 94 S.Ct. at 3108.

The Board has made available to the Court what appears to be its entire file pertaining to Dwight Barnes. The trial court in the present case will examine the letters of Melinda Barnes to the Board in chambers. If the court is of the opinion that any of such letters would tend to show bias, prejudice or motive to testify, such letter or letters should be made available to counsel for defense for cross-examination purposes only after Melinda Barnes testifies. Making the letters available will be a matter of discretion on the part of the trial court and can be reviewed where there has been an abuse of such discretion discussed below.

As stated in the *Nixon* case, the in-chambers inspection must be conducted in a manner conducive to "scrupulous protection against any release or publication of material not found by the court, at that state, * * * relevant to the issues of the trial for which it is sought." The trial court must give due and proper regard for the Board's need for confidentiality.

To comply with Article 42.12, Section 27, supra, we order that no other part of the file should be made available because there does not appear to be any claim of a constitutional right to the rest of the file.

In a proper case, where a need has been shown, a trial court may cause to be issued a subpoena to the Board for the file of a parolee. The entire file might not be requested or needed. It should not be necessary in most cases for the Court to order copies of the proceedings in a former trial such as the indictment, judgment, sentences and other documents forwarded by the clerk of the trial court. When instruments are received from the Board, they may be made available to counsel after the witness has testified. There may be instances where a trial judge in the interest of justice will not make the instruments available for inspection.

In *Gaskin v. State*, 353 S.W.2d 467, 469 (Tex.Cr.App.1962), Presiding Judge Woodley wrote for the Court:

"We have no doubt but that there are cases where the interests of justice require that the trial judge, even after trial, refuse to permit an inspection of instruments in the state's files, nor do we doubt that the burden is upon the defendant to show that the demand for inspection of the statement was timely made and the refusal of the court to grant such demand was prejudicial and constituted an abuse of discretion.

"The trial court may, however, in his discretion require production of a prior statement of a witness, and is not precluded from doing so by the absence of a statute or rule of procedure. If he refuses to so require, the statement should be made a part of the record on appeal, in order that the defendant will not be deprived of the opportunity to show, if he can, that the trial judge abused his discretion in refusing to grant the demand, and that the defendant was harmed by such ruling."

Although different instruments were involved in the *Gaskin* case, its reasoning and procedure are applicable here.

The relief sought by the Board is granted to the extent that the entire file of Dwight

Barnes will not be made available to his counsel.

The relief is granted upon the conditions set out above concerning the letters written by Melinda Barnes to the Board concerning Dwight Barnes.

It is so ordered.