The TEXAS DEPARTMENT OF COR-RECTIONS and the Texas Board of Pardons and Paroles, Applicants,

v.

Henry G. DALEHITE, Judge, 122nd. Judicial District Court, Respondent.

No. 68851.

Court of Criminal Appeals of Texas, En Banc.

Nov. 10, 1981.

Mark White, Atty. Gen., John W. Fainter, Jr., Richard E. Gray, III, Gilbert J. Pena, Douglas M. Becker and Charles A. Palmer, Asst. Attys. Gen., Austin, for applicants.

Craig A. Washington, Houston, and William T. Habern, Arlington, for respondent.

Robert Huttash, State's Atty., Austin, for the State.

OPINION

W. C. DAVIS, Judge.

This is an original action brought by the Texas Department of Corrections and the Texas Board of Pardons and Paroles seeking a writ of mandamus to direct the Honorable Henry G. Dalehite, Judge of the 122nd Judicial District Court of Galveston County to rescind an order for the production of all of the records relating to Eroy Edward Brown in the possession of the Board of Pardons and Paroles and the Texas Department of Corrections[1] for an *in camera* inspection by the trial court.

This action relates to the pending capital murder prosecution of Eroy Brown. Brown is charged with the murder of the warden and the farm manager of the Ellis Unit of the Texas Department of Corrections. Brown was an inmate confined in the Ellis Unit at the time of the offense. On September 4, 1981, Brown's defense counsel filed a "Motion for State Records." Defense counsel requested that all Brown's Department of Corrections and Pardon and Parole records be copied and made available to them. The motion recited:

"Eroy Brown has been incarcerated at the Texas Department of Corrections for several years. That during that time Texas Department of Corrections and the Parole Board have compiled files and records relative to his incarceration, including medical, conduct, progress, work, psychological and other information.

II.

The attorneys for Eroy Brown deem it necessary to evaluate matters contained in such files relative to this case by having knowledge of the contents of such records and files."

An order by the respondent dated September 25, 1981, appears in the record[2]; this order recites:

"After consideration of the Defendant's Motion for Discovery pursuant to Article 39.14, Texas Code of Criminal Procedure, for the production of copies of any and all records relating to the Defendant in possession of the Texas Board of Pardons and Paroles for *in camera* inspection by the court and release of such copies of records to the Defendant as may be material to his defense and consideration of argument of counsel for the Defendant and the Board of Pardons and Paroles, it is hereby

ORDERED, that any and all records now in the possession of the Texas Board of Pardons and Paroles relating to the Eroy Edward Brown be duplicated and forwarded or presented to the Court for *in camera* inspection and release to the Defendant of such records as may be, in the Court's discretion, material to the defense; and that this order is stayed pending the Board of Pardons and Paroles seeking a writ of mandamus or prohibition in an appropriate appellate court, the stay of such order to be effective only until October 5, 1981."

On September 28, 1981, this Court stayed the order of the trial court, and the case was set for submission.

The applicants claim that their records are privileged; therefore, they should not be required to produce them for the trial court's inspection. Article 42.12, Sec. 27, Vernon's Ann.C.C.P. provides:

"All information obtained in connection with inmates of the Texas Department of Corrections subject to parole, release to mandatory supervision, or executive clemency or individuals who may be on mandatory supervision or parole and un-

---

1. The "Order of Production" by the trial court, which appears in this record as an exhibit to applicants' "Petition for writ of mandamus and/or Prohibition" refers only to the production of records in the possession of the Board of Pardons and Paroles. The applicants maintain that other orders by the court included both the Board and the Department of Corrections. In view of our disposition of this case, we need not decide whether the records of the Department of Corrections are protected by the statutory privilege set forth in Art. 42.12, Sec. 27, Vernon's Ann.C.C.P.

2. This order is attached as an exhibit to applicants' petition for writ of mandamus.

der the supervision of the division, or persons directly identified in any proposed plan of release for a prisoner, shall be confidential and privileged information and shall not be subject to public inspection; provided, however, that all such information shall be available to the Governor and the Board of Pardons and Paroles upon request. It is further provided, that statistical and general information respecting the parole and mandatory supervision program and system, including the names of paroled prisoners, prisoners released to mandatory supervision, and data recorded in connection with parole and mandatory supervision services, shall be subject to public inspection at any reasonable time."

In *Texas Board of Pardons and Paroles v. Miller*, 590 S.W.2d 142 (Tex.Cr.App.1979), a parolee was charged with making obscene calls to his ex-wife. The attorneys for the defendant had issued a subpoena duces tecum to the Board for all the files and letters concerning the defendant, including letters from the defendant's ex-wife. The Board claimed statutory privilege under Article 42.12, Sec. 27, supra. This Court acknowledged the Board's need for confidentiality in order to function effectively. However, the Court held that a statutory privilege must give way when its enforcement would prevent the exercise of a constitutional right. The Court concluded the Board should make available for the trial court's inspection the letters in its file from the defendant's ex-wife. Because there was no claim of constitutional right to the rest of the file, it remained protected under Article 42.12, Sec. 27, supra. The determination as to whether the letters produced to the trial court would be made available to either party was held to be a matter of discretion on the part of the trial court.

In *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Supreme Court found that a claim of general privilege in the confidentiality of Presidential communications may be outweighed by the legitimate needs of the judicial process. The Court, in reasoning that the interests in upholding the privilege must be considered in light of the conflicting interests present, stated:

"This is nowhere more profoundly manifest than in our view that 'the twofold aim [of criminal justice] is that guilt shall not escape or innocence suffer.' *Berger v. United States*, 295 U.S. [78], at 88, 55 S.Ct. [629], at 633 [, 79 L.Ed. 1314]. We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense."

The Supreme Court concluded that the President's broad interest in confidentiality would not be vitiated by disclosure of a limited number of conversations *preliminarily shown to have some bearing on the pending criminal cases*, especially since the production of the materials was for *in camera* inspection with all the protection that a district court would be obliged to provide. The assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial.

From these two cases, it is seen that the invocation of a privilege, statutory or otherwise, will not prevent the disclosure of information when confronted with the fundamental principles of due process of law in the fair administration of justice. A presumption in favor of upholding the privilege against disclosure does exist. However, the presumption is rebutted by the demonstration of the need and relevancy of the requested information. See gen. Levine, *The Use of In Camera Hearings in*

**424**

*Ruling on the Informer Privilege,* 8 Univ. of Mich. Journal of Law Reform 151 (1974–1975).

■ The record in the instant case consists of the parties' briefs and the contested records. Even though the transcription of the hearing on Brown's "Motion for State Records" is not before this Court, we find that it is not the function of this Court to determine if the preliminary need for these records has been shown. This is the duty of the respondent in the exercise of his discretion. See *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980).

■ It is understandable, in view of the extraordinary facts of this case, that certain of the applicants' records might be relevant to defendant Brown's defense. However, the determination of what will or will not be made available to either party in the trial, within the framework of the rules of evidence, will be a matter of discretion on the part of the trial court and such determination can be reviewed where there has been an abuse of discretion. See *Texas Board of Pardons and Paroles v. Miller,* supra. We caution the trial court, as we did in *Miller,* supra, that the in-chambers inspection must be conducted in a manner conducive to scrupulous protection against any release of material not found by the trial court, at that stage, relevant to the issues of the trial for which it is sought.

■ Having again recognized and upheld the principles discussed in *Miller* regarding the confrontation of a privilege against certain constitutional rights and determined that the balancing of these interests is the proper function of the trial court in the exercise of its discretion, we turn to consider the appropriate disposition of this application for writ of mandamus.

■ There are two steps which must be met before a writ of mandamus is available as an appropriate remedy. First, the applicant must demonstrate that no other adequate remedy at law is available. Secondly, the relief sought must be in the nature of a ministerial act by respondent as opposed to a discretionary act. *Ordunez v.*

*Bean,* 579 S.W.2d 911 (Tex.Cr.App.1979); *State ex rel. Vance v. Routt,* 571 S.W.2d 903 (Tex.Cr.App.1978). An act is said to be ministerial where the law clearly spells out the duty to be performed by an official and does so with such certainty that nothing is left to the exercise of discretion or judgment. *Forbes v. City of Houston,* 356 S.W.2d 709 (Tex.Civ.App.1962).

■ The act by the respondent ordering the production of privileged records for his *in camera* inspection was an act within the trial court's discretion, *Texas Board of Pardons and Paroles v. Miller,* supra; therefore, this Court is without authority to issue a writ of mandamus ordering the respondent to rescind his order. See 37 Tex. Jur.2d, Mandamus, Sec. 47.

The relief requested is denied.

TEAGUE, J., not participating.

ROBERTS, J., dissents.