S. J. WILBURN, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–81–071–CR.

Court of Appeals of Texas, Corpus Christi.

June 17, 1982.

Robert A. Heath, Houston, for appellant.

Reynaldo S. Cantu, Jr., Dist. Atty., Brownsville, for appellee.

Before NYE, C. J., and UTTER and KENNEDY, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a conviction for attempted murder. Punishment, enhanced by two prior felony convictions, was assessed at life. We affirm.

The appellant's first two grounds of error questions the sufficiency of the evidence. The evidence elicited at trial revealed the following:

John W. Hensley was shot shortly before 7:54 a. m. on the morning of February 15, 1979, as he attempted to unlock his car in the parking lot of his South Padre Island condominium. No one actually saw the shooting take place but the sound of the shot brought his wife and neighbors to the scene where Hensley was slumped down by his car. His wife, Laurita Hensley, saw a two tone automobile with a dark top and maroon body, except for an aqua front fender, drive very closely by her husband's body. She ran inside and called the police and gave a description of the car she had seen. As a result of the shooting, Hensley is permanently blind in both eyes.

Two other residents of the condominium complex testified that they ran outside on hearing the shot. They saw a maroon car leaving the parking lot. One resident made a mental note of the license plate but missed the correct plate of the vehicle by one digit. Mrs. Hensley and the other two witnesses testified that the car they later saw in custody at the South Padre Island police station was the same car that they saw leaving the scene. All three also testified that they could not see clearly into the car on the morning of the shooting because of the heavy amount of dew. One witness did testify that he saw two persons in the vehicle.

Having been given a description of the car and a license plate number over police

radio, Robert Register, Chief of Police for the City of South Padre Island, recognized the vehicle going across the causeway from South Padre Island to Port Isabel. He radioed one of his officers to stop the vehicle. He could not stop the vehicle because he was on the opposite side of the causeway and could not cross over the divider. When he reached the South Padre side of the causeway, Chief Register turned around and went back to the Port Isabel police department. He was told that a man was in custody. Chief Register had seen the driver wearing an orange ski cap, sunglasses and a white shirt. Although the man in custody had on essentially the same clothing he could not tell if the man in custody was the same man.

Officer Art Garcia testified that he was an investigator with the South Padre Island police department. He testified that he saw the vehicle in question stopped by a Port Isabel police unit and that the driver was wearing an orange ski cap, wraparound glasses, a T-shirt and two pairs of trousers with a dark blue pair over a light brown pair. Officer Garcia identified the appellant as the person in the clothes. He further testified that he never saw the appellant in the car.

Officer Lorenzo Gonzales, Jr., testified that he was an officer with the Port Isabel police department. Gonzales testified that he had been present when the vehicle was stopped. Officer Gonzales identified appellant as the person in the automobile.

The vehicle, which was taken into custody, was a black over maroon Cadillac license number LSE606 which had been modified in the following respects: Two gun ports had been cut into the trunk lid, one on the left and one on the right side. The port on the left side had a tripod stationed behind it. The back seat had been taken out and a hinged plywood board permitting access to the trunk placed there in its stead. Acoustic tiles had been placed in the roof of the trunk to muffle any sound.

This same car together with a blue and white El Dorado was seen parked on the causeway by Clifford D. Hutson and his daughter at approximately 8:00 a. m. on February the 15th, 1979. The father and daughter testified that they saw the man in the maroon Cadillac outside of the car throwing two packages off the causeway into the Laguna Madre. After the man threw the packages into the Laguna Madre, he ran back, got into the maroon Cadillac and both he and the blue and white El Dorado sped off along the causeway to Port Isabel passing the Hutsons en route. The Hutsons never lost sight of the two cars. They later saw the Port Isabel police department pull the maroon Cadillac over and waive the blue and white El Dorado on. Both testified that the man pulled over was the same man who was on the bridge. Hutson's daughter had written down the license number of both cars when she saw them parked on the causeway.

Texas Ranger Bruce Castille and other divers and law enforcement officers subsequently found a .223 rifle in the Laguna Madre near the place where they had been told to look by the Hutsons. In addition, they found several rounds of loose ammunition and a bag containing several more rounds and clips of ammunition. All of the rounds were military ammunition from the Lake City arsenal and were stamped "LC". Castille also found a spent "LC" cartridge that was jammed in the gun. Castille later found a cartridge casing in the trunk of the maroon Cadillac which also came from the Lake City arsenal. Ron Richardson, a firearms expert with the Texas Department of Public Safety, determined that both cartridges had been fired from the same weapon. The bullet which injured the victim was never recovered and consequently no examination of it was made.

Chip Jeter identified the appellant as someone whom he had known several years. He further testified that appellant had approached him in the Taft Lounge in Houston and asked him to buy a .222 for him. Jeter looked for a .222 for appellant but could only find a .223. He had a friend buy the .223 gun with $300.00 which appellant had given him. He took it to a gun shop to have a scope put on it but did not pick it up.

While he could not positively identify the gun presented to him by the State, he did testify that it was the same gun or was identical to the one he had obtained for appellant.

Dr. Leal, the opthamologist who worked on Hensely after the shooting, testified that the wound which the bullet had made would be consistent with a .223. He further stated that the bullet travelled in an upward path thus implying it was fired from a prone position. No foreign matter was recovered from the victim's eyes, however.

Appellant's car, modified as it was, aroused a great deal of curiosity from onlookers. One to two weeks prior to the shooting, many witnesses recalled seeing the vehicle in parking lots and thinking it odd. No one ever saw appellant in the car prior to February 15, 1979, but no one saw anyone else driving the car either.

Steve Robertson, a DPS chemist, took samples from the clothes appellant was wearing at the time of his arrest and found parts of carpet, insulation and cat hair. While none of these items are conclusively identifiable, Robertson testified that they were consistent with the same types of items found in the trunk of the maroon Cadillac with the carpet fibers and the insulation fragments having the same identifiable qualities. Robertson testified that while cat hair is not identifiable like human hair, he could tell that it was cat hair.

Several motel records introduced through various witnesses reflected that appellant had been in South Padre Island with the blue and white El Dorado extensively prior to the shooting. Hotel records reflect that he checked in at the Sea Ranch Motel February 12 through 14, 1979, with the El Dorado.

Arlene Patton, the manager of the Bahia Mar Coffee Shop saw appellant at 7:05 a. m. on the day of the shooting in the coffee shop. Appellant had entered with another man and was wearing a khaki colored outfit. She stated that appellant stayed for about forty minutes and left but she didn't see what he was driving. Other testimony reflected that it was about a two minute drive from the coffee shop to the scene of the shooting.

Other evidence consisted of some hotel desk checks, letters and diary entries written by the appellant. These items appeared in Houston investigative reporter Bob Branson's car from an anonymous source. The writings were variously collaborated as being made by the appellant. Many of the diary entries reflected a man stalking another man and making plans to do away with him. The prosecution matched many of these writings to events which had actually occurred before the shooting, many of them preparatory to the shooting itself.

Finally, the prosecution introduced letters from appellant to his girlfriend, Emma Montano, written after his incarceration in the Cameron County jail which discussed the criminal charges against him. Although appellant never admitted to the shooting in the letters, he often alluded to the events prior to the shooting. In one letter appellant asked her to arrange for the burning of the maroon Cadillac since it was the only piece of evidence against him.

The standard of review in a circumstantial evidence case is that in order to sustain a conviction, the evidence must exclude every reasonable hypothesis except the guilt of the accused. *Dixon v. State*, 541 S.W.2d 437 (Tex.Cr.App.1976). Proof amounting only to a strong suspicion or mere probability is insufficient. *Stogsdill v. State*, 552 S.W.2d 481 (Tex.Cr.App.1977); *Thomas v. State*, 148 Tex.Cr.R. 526, 189 S.W.2d 621 (1945). However, it is not necessary that every fact point directly and independently to the defendant's guilt but rather it is sufficient if the conclusion is warranted by the combined and cumulative force of all the incriminating evidence. *Stogsdill, supra.* It is true that the guilt of the accused need be shown such that a moral certainty of guilt is produced to the exclusion of every reasonable doubt, *Ysasaga v. State*, 444 S.W.2d 305 (Tex.Cr.App. 1969). The verdict of the jury is not to be taken lightly and will only be disturbed for good cause. As was stated in *Floyd v. State*, 494 S.W.2d 828 (Tex.Cr.App.1973):

"... [W]hen a jury, advised of the restrictions which the law places on circumstantial evidence, reaches the conclusion upon evidence properly before them that the accused is guilty, it is not for the reviewing court to supplant their findings by its own unless it is able to point to some weaknesses, omissions, or inconsistencies in the evidence which destroy its cogency." *Floyd* at 830.

We have reviewed the evidence in this case and have determined that there was sufficient evidence on which the jury could base a conviction for attempted murder. The evidence already discussed clearly put appellant on the island the morning of the shooting, placed the black over maroon Cadillac at the scene of the shooting, placed appellant on the causeway throwing two packages over the side and finally showed appellant as the sole occupant of the vehicle when it was stopped by the authorities in Port Isabel. The only period of time which is unaccounted for is the very brief period from the time the modified Cadillac left the parking lot at Hensley's condominium until the car was seen stopped on the causeway. Our duty on appeal is not to rule out every imaginable hypothesis but instead to ensure that the evidence rules out every reasonable hypothesis except the guilt of appellant. *Phelps v. State*, 594 S.W.2d 434 (Tex.Cr. App.1980).

Of the evidence elicited at trial by the prosecution, only two items are inconsistent with a jury finding of appellant being the only perpetrator of the crime. First, one witness believed he saw two persons in the black over maroon Cadillac as it left the scene of the shooting. Secondly, there is the fact that appellant was observed stopped on the causeway with a blue and white El Dorado which he had driven frequently in the past. For this reason, the jury was also instructed on the law of parties. While appellant does not complain in the brief filed by Appellant's attorney of the propriety of such instruction, it is important that we review it here in order to determine the sufficiency of the evidence. In *Barron v. State*, 566 S.W.2d 929 (Tex.Cr.

App.1978), the defendant was convicted of murder on the basis of circumstantial evidence combined with the law of parties. In affirming the conviction the Court of Criminal Appeals stated that the defendant would be guilty as a party where he was physically present at the commission of the offense and further, that the jury could find the defendant guilty whether he aided in the actual commission of the offense or not. The Court went on to say:

"Moreover, it was permissable for the jury, in determining whether appellant participated as a party, to look to events occurring before, during and after the commission of the offense as well as to actions of the parties which show an understanding and common design to murder the deceased." *Barron* at 931.

*Tarpley v. State*, 565 S.W.2d 525 (Tex.Cr. App.1978) held that the defendant would be guilty as a party where he is physically present at the commission of the offense and encourages the commission of the offense by words or other agreement. *Tarpley*, like *Barron*, also holds that the trial court may look to events occurring before, during or after the commission of the offense in determining understanding and common design among the parties.

Given this standard of review coupled with the law of parties, we find that there is sufficient evidence by which the jury could rule out every reasonable hypothesis but the guilt of the appellant to a moral certainty. It is not necessary that every fact point directly and independently to the guilt of the accused but rather it is sufficient if the conclusion is warranted by the combined and cumulative force of all of the incriminating evidence. *Stogsdill, supra. Creel v. State*, 493 S.W.2d 814 (Tex.Cr.App. 1973).

Appellant's first two grounds of error alleging insufficiency of the evidence are therefore overruled.

Appellant next contests the admission of a copy of a letter sent by the appellant to his parole officer into evidence. The prosecution introduced the letter for the purpose of showing a distinctive typing style. This

distinctive typing style was also apparent in another exhibit that the appellant had allegedly typed. The absence of the original letter was explained by a showing that it was in the field file of the parole office and that the Court of Criminal Appeals had stayed the disclosure of the file until such time as it could hear a mandamus against such disclosure which had been filed by defense counsel. Since the Court of Criminal Appeals had recessed for a month, the State chose instead to rely upon the copy of the letter which the parole officer had in his possession. The trial court ruled that this sufficiently accounted for the nonproduction of the original and allowed the copy into evidence.

Any problems attendant to the admission of the letter would arise as a result of art. 42.12(27) TEX.CODE CRIM.PRO. (Vernon 1979) which provides in relevant part as follows:

"Sec. 27. All information obtained in connection with inmates of the Texas Department of Corrections subject to parole, release to mandatory supervision, or executive clemency or individuals who may be on mandatory supervision or parole and under the supervision of the division, or persons directly identified in any proposed plan of release for a prisoner, shall be confidential and privileged information and shall not be subject to public inspection..."

The only case which has interpreted this statute to date has been *Texas Board of Pardons & Paroles v. Miller*, 590 S.W.2d 142 (Tex.Cr.App.1979). In *Miller*, the defendant had sought disclosure of the defendant's parole file on an unrelated matter in order to show bias of a prosecution witness. The trial judge granted such discovery and the Board of Pardons & Paroles sought mandamus to prevent the disclosure under art. 42.12(27) arguing that the confidentiality requirements contained therein were essential to a frank and candid entry into the parolee's file. The Court of Criminal Appeals granted the relief in part and denied it in part. The Court held that the Texas statute must bow to the defendant's sixth amendment rights and so ordered the trial

court to make an *in camera* inspection of the file to determine what would be relevant to the defendant's case.

Appellant in the instant case places heavy reliance on the *Miller* decision arguing that if it is so difficult for the defendant to examine his own file for his own uses, then it must be virtually impossible for the State to obtain it since they are accorded no rights which would reach the level of defendant's sixth amendment rights. The appellant overlooks one important distinction in this regard. Appellant's complete parole file was never produced. Rather, what the State introduced at trial was a copy of a letter which was also in appellant's parole file. Appellant now claims that the letter by virtue of being in the parole file also takes on the sanctity of the parole file itself. Carried to its logical extreme, appellant's argument would preclude the introduction of any evidence obtained from any source just by the fortuitous circumstance of it also appearing in the defendant's parole file.

We do not believe that this was the intent of the confidentiality provisions of art. 42.12(27). Section 27 was enacted to encourage frank and candid disclosures in the parolee's file. *See Miller, supra.* It in no way implies that information obtained from a different source should be made confidential by its inclusion in the file.

■ *Miller* also differs significantly from the instant case in that in *Miller* neither side was aware of the contents of the file whereas here the State already possessed the copy of the letter and was therefore aware of its contents. It is also significant that the letter was not introduced for the truth of the matters contained therein but rather for the purpose of showing a distinctive typing style apparent in another State's exhibit previously admitted in evidence, without objection.

· Appellant's third ground of error is overruled.

■ In his fourth ground of error, appellant alleges that the court erred in allowing

this letter into evidence because it showed the existence of an extraneous offense. Appellant has combined grounds three and four for argument and fails to address ground four. Appellant has failed to comply with art. 40.09(9) TEX.CODE CRIM. PRO. (Vernon Supp.1982). Nothing is presented for our review. *Williams v. State*, 504 S.W.2d 477 (Tex.Cr.App.1974), *Casey v. State*, 475 S.W.2d 920 (Tex.Cr.App. 1972).

 In his final ground of error, appellant contests the introduction of evidence found at his girlfriend's apartment. In order to have standing to raise a search and seizure question the appellant must satisfy one of three requirements: 1) he must lawfully be at the premises during the search; 2) he must show that the item seized is an essential element of the offense; or 3) he must show that he has either a proprietary or possessory interest in the place searched. *Johnson v. State*, 583 S.W.2d 399 (Tex.Cr.App.1979). The evidence reflects that although appellant paid the rent for his girlfriend, Ms. Montano, he never slept there nor did he have any belongings there other than a Spanish-English dictionary. At all times appellant maintained his residence in a different location. The items seized were letters and not essential elements of the crime perpetrated. Finally, appellant was unquestionably in the Cameron County Jail and not at the house at the time of the search. Thus, appellant has shown no standing to contest the legality of the search and his ground of error is overruled accordingly. *Johnson v. State, supra.*

## APPELLANT'S PRO SE GROUNDS

Appellant has also filed an extensive *pro se* brief in his behalf raising an additional seven grounds of error.

Appellant complains in his first ground of error that the State should have put on more evidence than it did to convict him. In this regard, appellant relies on Evidence § 745, 24 Tex.Jur.2d 427 which states:

"Where circumstantial evidence relied upon by the prosecution is obviously weak, and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction."

This passage was quoted favorably in *King v. State*, 396 S.W.2d 409 (Tex.Cr.App.1965), *See also Routon v. State*, 589 S.W.2d 700 (Tex.Cr.App.1979). Appellant contends that this necessitates the State presenting more evidence on his guilt. As we have previously noted in this opinion the evidence in this case was sufficient to sustain the conviction of the appellant.

 Appellant also contends that this rule of law requires that the State has the burden to offer and to elicit all evidence favorable to the accused at trial or be violative of due process. We do not agree. Due process merely requires that an accused be afforded an opportunity to present evidence and that any exculpatory evidence known to the State be made available to the accused. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Quinones v. State*, 592 S.W.2d 933 (Tex.Cr.App. 1980).

Appellant similarly complains in his seventh ground of error that the State failed to sustain its burden of proof. For the reasons stated previously herein, appellant's first and seventh grounds of error are overruled.

Appellant complains in his second *pro se* ground of error of the introduction by the trial court of five exhibits offered by the State which were obtained from an unknown source by Houston television investigative reporter Bob Branson. Branson was instructed by the source to leave his car unattended at a specified time and location for fifteen minutes. Branson did so and returned to find a black valise containing the five exhibits complained of among other

things. Branson then taped a television story on the subject matter and flew to Brownsville to turn the material over to Texas Ranger Bruce Castille.

The five exhibits complained of are two photographs of the victim and his wife on vacation, a typewritten list of notes from which a latent fingerprint of appellant was taken, a letter allegedly written by the appellant to his girlfriend, Emma Montano, relating that he intended to complete his "business" on the fifteenth and a diary allegedly typewritten by the appellant denoting his attempts to track and kill the victim, John Hensley.

■ We first deal with the photographs introduced into evidence. Both photographs were introduced without objection. No error is preserved. Similarly, no objection was made to the introduction of the typewritten list with appellant's fingerprint. Any error is therefore waived. *Beck v. State*, 583 S.W.2d 338 (Tex.Cr.App. 1979).

■ Appellant objected to the introduction of the letter and "diary" on grounds that both were hearsay; that it was an attempt to force the appellant to testify and that insufficient predicate had been laid for the introduction of such statements. We note that both statements are in the character of admissions and both were allegedly made prior to any arrest or suspicion. Thus, if the items are sufficiently connected to the appellant, they are not subject to a hearsay exclusion and are clearly admissable even though they put the appellant in a posture of needing to testify to contravene the evidence. *Daniels v. State*, 600 S.W.2d 813 (Tex.Cr.App.1980); *Russell v. State*, 598 S.W.2d 238 (Tex.Cr. App.1980); Ray, 1 A Tex. Law of Evidence § 1162 (3rd Ed. 1980).

■ The true import of appellant's objection is whether or not a proper predicate was laid. We note at the outset of our discussion that the objection leveled at both exhibits was merely that the predicate was not sufficient. Such objection is far too general and should not preserve error un-

less it specified in what respect. *Canada v. State*, 589 S.W.2d 452 (Tex.Cr.App.1979); *Boss v. State*, 489 S.W.2d 582 (Tex.Cr.App. 1972). None-the-less we have reviewed the evidence and feel that both exhibits were sufficiently tied to the appellant to allow their introduction. *Daniels v. State, supra; Russell v. State, supra.*

Appellant's so called diary comported with testimony elicited at trial in numerous respects and contained an unusual writing style which witnesses identified as the same style they had received from appellant. The letter introduced reflects appellant's stay on South Padre during the time in question. The letter was corroborated elsewhere in the record.

Appellant's second *pro se* ground is overruled.

■ Appellant claims in his third *pro se* ground of error that the trial court erred in instructing the jury on the law of parties when no such allegations were contained in the indictment and where no evidence adduced at trial indicated that any other person was involved with the appellant. The record indicates that one witness thought he saw two persons in the black over maroon Cadillac and at least two other witnesses saw the black over maroon Cadillac parked on the causeway with a blue and white El Dorado. If the evidence supports a charge on the law of parties the trial court may submit such a charge to the jury even though the indictment contains no such allegation. *English v. State*, 592 S.W.2d 949 (Tex.Cr.App.1980); *LeDuc v. State*, 593 S.W.2d 678 (Tex.Cr.App.1979). The evidence sufficiently supported such a charge. Appellant's third *pro se* ground of error is overruled.

■ Appellant complains again in his fourth *pro se* ground of error of the admission into evidence of the letters seized at Emma Montano's residence. We adhere to our original disposition of this point and hold that the appellant lacks standing to contest such a search. *Johnson v. State, supra.* Appellant further complains in ground four that a warrant for personal

writings is illegal under State law. While we note that Art. 18.02 TEX.CODE CRIM. PRO. specifically excludes personal writings of the accused from being the subject of a search warrant, we do not reach this complaint due to our previous requirement of standing to raise such a question. *Johnson v. State, supra.* In any event, the search warrant itself was not made a part of the record and so no error is preserved as regards the invalidity of such warrant. *Irwin v. State,* 441 S.W.2d 203 (Tex.Cr.App.1968); *Mattei v. State,* 455 S.W.2d 761 (Tex.Cr. App.1970).

■ Appellant complains in his fifth *pro se* ground of the trial court's admission into evidence of the gun alleged to be the murder weapon. Examination of the record reveals that the rifle was admitted into evidence without objection. Any error which might have existed is therefore waived since it was not objected to at trial. *Beck v. State, supra.*

■ Appellant complains in his sixth *pro se* ground of error of the introduction of two separate matters into evidence. Appellant first alleges error in the failure of the trial court to grant a mistrial for the repeated "collective" testimony of the State's ballistics expert. The record reflects that although the State's witness used the collective "we" throughout his testimony, appellant objected to such testimony on but one occasion and then only with regard to one answer where the witness implied that his opinion was the same as four other experts who had worked the case. The trial court sustained the objection and instructed the jury to disregard the remark. Such instruction was sufficiently curative of any error. *Cavender v. State,* 547 S.W.2d 601 (Tex.Cr.App.1977); *Wockenfuss v. State,* 521 S.W.2d 630 (Tex. Cr.App.1975).

■ Appellant also alleges under this ground that it was error to allow a chemist called by the State to testify to fiber comparison because such testimony has not been shown itself to be reliable. The record reflects that no objection was lodged to this

testimony at trial and therefore any error was waived. *Masquelette v. State,* 579 S.W.2d 478 (Tex.Cr.App.1979); *Von Byrd v. State,* 569 S.W.2d 883 (Tex.Cr.App.1978).

The judgment is affirmed.