Jack SKEEN, Jr., Relator,

v.

Honorable Cynthia Stevens KENT, Respondent.

No. 12–95–00286–CR.

Court of Appeals of Texas, Tyler.

Dec. 6, 1995.

Rehearing Overruled Dec. 6, 1996.

Real Party in Interest—Robt. Clifton Perkins.

Jack Skeen, Jr., Smith County Criminal Dist. Atty., for State.

PER CURIAM.

In this original mandamus proceeding, Relator, Jack Skeen, Jr., Smith County Criminal District Attorney, seeks the writ to compel Respondent, the Honorable Cynthia Stevens Kent, District Judge, to remove sitting juror Erica Godwin from the jury in Cause No. 4–94–228 and to seat the alternate juror in Godwin's place. A valid concern has been raised by Relator in the instant proceeding. Undoubtedly, the fundamental fairness of a trial must be questioned when one of its jurors has formed a conclusion as to the guilt or innocence of a defendant, and that conclusion was reached not from the evidence, but from opinions formulated during her previous employment with the defendant's own counsel. Nevertheless, for the reasons expressed herein, we must overrule Relator's motion for leave to file the application for writ of mandamus. The underlying facts giving rise to this proceeding are set forth below.

*PROCEEDINGS IN THE TRIAL COURT*

On November 21, 1995, the parties conducted jury selection in Cause No. 4–94–228, a capital murder trial styled *The State of Texas v. Cedric Coleman*. During voir dire, the venire was asked if any of its members knew Robert Perkins, Coleman's defense counsel. In response to this question venireperson Erica Godwin responded affirmatively by raising her hand. Thereafter, she and others who had raised their hands were each briefly questioned by Respondent as to how

they knew Perkins. Godwin told the Court that she had met Perkins through a business relationship; however, when asked whether that relationship would interfere with her ability to be a fair and impartial juror, Godwin responded "no." She further stated in response to Respondent's questions that she could be fair to both the State and the Defense and that Perkins was not presently representing her.

Respondent then asked the panel the following questions:

> Have you from hearsay or otherwise, established in your mind such a conclusion as to the guilt or innocence of the Defendant, Mr. Coleman, as would influence you in your action in finding a verdict?

> Again, to the panel, I want you to raise your hand if you have, from hearsay or otherwise, established in your mind such a conclusion as to the guilt or innocence of the Defendant as would influence you in your action if finding a verdict, and that that conclusion so established would influence your verdict in this case?

Godwin did not raise her hand. Respondent later asked the following questions of the panel:

> Is there anyone present who has, before they came into this courtroom today, that you have not heard any kind of news reports or conversation or discussion—you don't know anything about the case before you came in?

.        .        .        .        .

> Is there anyone present, now that you've thought about it, and you've sort of listened to everything that I have to say, is there anyone present, from hearsay or otherwise, conversations, things you've read, things you've seen, talked about, whatever, from hearsay or otherwise, you have established in your mind such a conclusion as to the guilt or innocence of the Defendant as would influence you in rendering a verdict; that is to say, that opinion, that conclusion that you've reached in your mind would influence your verdict in this case if you were a juror, you couldn't put it out of your mind, it's going to influence you as a juror?

Godwin did not raise her hand or respond to either question.

Thereafter, Godwin was selected for jury duty in the subject case. The jury was then given strict oral and written instructions pertaining to their responsibilities including the instruction that they were not to discuss the case or mention it to anyone. The jury was then released for the Thanksgiving holidays and instructed to return to the courthouse for jury service on Monday morning, November 27, 1995.

On November 27, 1995, as juror Godwin passed Respondent in the hallway, she stated: "Judge, I need to let you know I know Mr. Perkins and State's counsel." In response, Respondent informed Godwin that the matter had been covered in voir dire and that she could not talk about the case with Godwin. That same evening, one of the State's prosecuting attorneys was contacted by a local attorney. That local attorney informed the prosecutor that he had knowledge via Godwin's cousin that Godwin had worked for Perkins during the previous summer, had read parts of the defendant's file, already had the opinion that the defendant was innocent, and was surprised that she had been selected as a juror. This phone conference was brought to Respondent's attention the following day, November 28, 1995, at which time Respondent called Godwin into the courtroom and questioned her. During that *in camera* hearing, the following transpired:

Q. [By the Court] Do you remember the instruction which the Court gave to you, "Do not discuss anything about the case or even mention it to anyone whomsoever, including your wife or husband, nor permit anyone to mention it in your hearing until you are discharged as a juror or excused from the case. If anyone attempts to discuss the case, report it to me at once."?

Do you remember that instruction?

A. [By Godwin] Yes, I do. And I was trying to tell you this yesterday morning.

.        .        .        .        .

Q. What were you trying to tell me yesterday morning?

A. That one of my relatives found out and then—

Q. One of your relatives found out what?

A. That I was on this case.

Q. Okay.

A. And they said I shouldn't be on there.

. . . . .

Q. Okay. Did you have discussions with him about the case?

A. No, I did not.

Q. Okay. What was the extent of your discussions?

A. That was it. I—I didn't tell her—I didn't tell the cousin anything else other than that I was on the case or whatever.

Q. Who is the cousin?

A. Marlow Matlock.

. . . . .

Q. Tell me exactly what the extent of your conversation was.

A. Because I'm getting married next week, I asked her to do a lot of stuff for me this week, because I said I'm on trial at the courthouse, and I wasn't going to be able to do anything. And so I guess she went further than that and—

Q. Tell me exactly what she said to you and what you said to her about—anything that had to do with this case.

A. Nothing. She tried to ask me. I said, "I'm not allowed to tell you that."

Q. Okay.

A. And then I didn't know if this was wrong. I just said it was a criminal case, and that was it.

Q. Okay.

A. And I didn't know if that was wrong or not. But I guess she went further and went on her own little venturing— try to ask somebody else something.

Q. I don't care what she asked other people.

A. I didn't tell her anything else.

Q. What else did she say to you?

A. Nothing, until last night she called and told me that she spoke with another attorney, and asked—she said that, "You're not supposed to be on that trial at all."

. . . . .

Q. Okay. Anything else that—any other conversation or statements that you've made since I put you under the instructions regarding this case with anyone else or with this cousin of yours?

A. No. I have not.

The next day, on November 29, 1995, Godwin's cousin, Marlow Matlock, testified before Respondent that she and Godwin had conversed over the weekend, and that Godwin had told her in regard to her jury service: "I didn't think I could, but they picked me anyway." In response to the prosecutor's question: "Now did she make any comments about her feelings about the case?" Matlock responded: "She had made the comment that she thought that he was innocent." With regard to Godwin's employment at Perkins' office, Matlock testified that Godwin filled in for her while Matlock was on vacation. She further stated that Godwin liked to hang around the office since she did not have another job.

Following Matlock's testimony, Respondent entertained arguments, and then denied the State's motion to disqualify Godwin as a juror. In support of her position, Respondent stated that the juror had not admitted to having given her opinion as to the guilt or innocence of the defendant. Moreover, she stated:

Any jury misconduct with respect to her remark that she thought the Defendant was innocent does not show that she has formed an opinion that would influence her verdict in the case, nor does it rise to the level of disqualification or removal of a juror under the cases, Texas law, and under the status of the statute dealing with the disqualification and removal of jurors.

The Court does not believe there has been any evidence to demonstrate to this Court that she has such a bias or a prejudice that could not be set aside in this case,

or that she has such a bias or prejudice as would prevent her from rendering a verdict based upon the evidence presented during the trial of the case.

To remove this juror on State's motion at this time, in addition to being an abuse of discretion by the Court, would the Court do that, I believe would be essentially giving the State an additional peremptory strike during trial. The Court denies the State's motion, and we'll proceed with the trial.

Thereafter, the State moved for mistrial, and the Respondent overruled the motion. Respondent found that, at this juncture of the trial, double jeopardy would attach, and that there was no manifest necessity mandating a retrial of the case.

Following the trial court's November 29, 1995 ruling on the motion to disqualify Godwin as a juror, on December 4, 1995, Respondent again questioned Godwin, asking her "will you be able to, as a juror, pay attention, focus and decide the case fairly and impartially based on the evidence and law?" Godwin responded "Yes." Relator then filed the instant mandamus proceeding seeking removal of juror Godwin and placement of the alternate in her stead.

### JURISDICTION OF THIS COURT

The court of appeals has mandamus jurisdiction in criminal law matters concurrent with the court of criminal appeals. *Dickens v. Court of Appeals for the Second Supreme Judicial District of Texas,* 727 S.W.2d 542 (Tex.Cr.App.1987); TEX. GOV'T CODE ANN. § 22.221(b) (Vernon 1988).

### APPLICATION OF LAW TO FACTS

Although we share the above mentioned concerns of the Relator regarding the integrity and impartiality of the jury, we feel constrained to deny Relator's motion since the Relator has not shown that he is entitled to mandamus relief under the requirements set forth by the Court of Criminal Appeals. To obtain relief through writ of mandamus, a relator must establish that 1) no other adequate remedy at law is available and 2) the act he seeks to compel is ministerial, rather than discretionary, in nature. *Dickens,* 727

S.W.2d at 548; *see also Ordunez v. Bean,* 579 S.W.2d 911, 913 (Tex.Cr.App.1979). Relator has met the first element of the *Dickens* requirements since he would have no right to appeal, or any other adequate remedy at law, if the defendant were acquitted.

The second element, however, has not been satisfied by Relator since he has failed to show that the Respondent's act of failing to remove Godwin is tantamount to a violation of a ministerial act. An act is 'ministerial' if it constitutes a duty clearly fixed and required by law, *Smith v. Flack,* 728 S.W.2d 784 (Tex.Cr.App.1987); *State ex rel. Curry v. Gray,* 726 S.W.2d 125, 128 (Tex.Cr. App.1987) (op. on reh'g), and if the duty to be performed is described with such certainty that nothing is left to the exercise of discretion or judgment. *Texas Board of Pardons and Paroles v. Miller,* 590 S.W.2d 142 (Tex. Cr.App.1979). We have no authority in criminal cases to issue a writ of mandamus to compel a trial judge to perform an act unless the trial judge has a clear legal duty, ministerial in character—as distinguished from discretionary—, to perform the act. *State ex rel. Skeen v. Tunnell,* 768 S.W.2d 765, 767 (Tex.App.—Tyler 1989, original proceeding); *Smith v. Flack,* 728 S.W.2d at 789; *State ex rel. Wade v. Mays,* 689 S.W.2d 893, 898–899 (Tex.Cr.App.1985).

In the present case, the Relator requests that this Court order the Respondent to remove Godwin, arguing that she had "no discretion" to allow Godwin to remain on the jury; however, the Relator has provided no precedential authority which suggests that the removal of a sitting juror is a ministerial, rather than discretionary, act. Moreover, Relator has provided no statutory authority which makes the removal of the juror mandatory under the circumstances presented here.

Analogous situations suggest that the determination of whether a juror may continue on a jury is indeed discretionary in nature. When the issue of a juror's failure to disclose facts during voir dire is raised at a hearing on a motion for a new trial by the defendant, the Court of Criminal Appeals has held that the issue is for the determination of the trial judge and the judge's decision will not be

reversed *unless an abuse of discretion is shown.* Beck v. State, 573 S.W.2d 786 (Tex. Cr.App.1978). *See also Von January v. State,* 576 S.W.2d 43, 45 (Tex.Cr.App.1978). In *Anderson v. State,* 633 S.W.2d 851, 854 (Tex.Cr.App.1982), the Court held that the trial court has the *discretion* to determine whether bias or prejudice exists to such a degree that the prospective juror is disqualified and should be excused from jury service, and that the trial court's findings should only be overruled if bias has been established *as a matter of law.*

The Court of Criminal Appeals has also specifically recognized the subjective nature of juror evaluation by the trial court. In *Harris v. State,* 784 S.W.2d 5, 23 (Tex.Cr. App.1989), the Court stated the following:

> When reviewing the trial judge's ruling on a challenge to a prospective juror, we recognize that the trial judge is in the best position to gauge, inter alia, the venireman's sincerity and demeanor, and we therefore accord due deference to the decision of the trial court.

In the instant case, the record clearly reflects that Respondent was faced with conflicting evidence, requiring her evaluation of both objective and subjective elements in determining whether the juror was to be removed. Respondent repeatedly questioned the panel during voir dire about whether any of the venirepersons had established a conclusion as to the guilt of innocence of the Defendant, as would influence their action in finding a verdict. Godwin never affirmatively responded to these questions. When the State requested a hearing on the potential problems related to Godwin, Respondent questioned Godwin regarding her contact with Matlock. Godwin stated that she told Matlock that she was serving on a criminal jury, but that "[she] did not tell her anything else." Respondent then permitted question-

ing of Matlock concerning the allegations that Godwin had withheld information from the court. The testimony was conflicting as to the issue of whether Godwin stated that she thought that the defendant was innocent. On December 4, 1995, Respondent again asked Godwin about if she could decide the case fairly and impartially based on the evidence and law, and Godwin confirmed that she could. Based on the conflicting evidence before the court, the Respondent specifically found that Godwin did not have a bias or a prejudice that could not be set aside in this case, or that she has such a bias or prejudice as would prevent her from rendering a verdict.

■ Under the specific facts of the case, Respondent was required to evaluate the conflicting evidence in the context of the subsequent rehabilitation of Godwin, and to determine whether Godwin could serve as a juror. Since Godwin's alleged bias was not established as a matter of law, *see Anderson,* 633 S.W.2d at 854, Respondent's use of discretion in the matter was inevitably required. Therefore, absent controlling authority to the contrary, we hold that Relator has failed to establish that the requested acts would be ministerial in nature.[1]

Apart from our analysis of our standard of review, we also note that certain constitutional considerations surround our decision. As stated by Respondent at the hearing, double jeopardy implications may arise if Respondent is ordered to remove Godwin for misconduct where not specifically authorized by statute. It is well settled that a criminal defendant has a significant interest in having his trial completed by the first jury empaneled to try him. *Oregon v. Kennedy,* 456 U.S. 667, 673, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416 (1982). *See also Ex parte Williams,* 870 S.W.2d 343, 346 (Tex.App.— Fort Worth 1994, pet. ref'd).

1. Moreover, even if we were able to apply the abuse of discretion standard, as permitted in review of civil mandamus actions, we would nevertheless be required to find that the Respondent has not abused her discretion as trier of fact in determining whether Godwin should have been removed. An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles of law, *i.e.,* it acts arbitrarily or unreasonably. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Cr.App.1990). The parties here agree that there were no specific guiding principles to direct the trial court in this inquiry since the case is one of first impression. Furthermore, as stated, the record demonstrates that Respondent did not act arbitrarily or unreasonably in her decision.

Therefore, for the foregoing reasons, we overrule Relator's motion for leave to file the application for writ of mandamus; likewise, we lift this Court's stay order entered December 4, 1995.