Kenneth Dewayne THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 69938.

Court of Criminal Appeals of Texas, En Banc.

June 3, 1992.

Rehearing Denied Sept. 23, 1992.

Richard R. Shreves, Austin, E.X. Martin, III, Dallas, for appellant.

John Vance, Dist. Atty., and Jeffrey B. Keck, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## ORDER

PER CURIAM.

Appellant was convicted of capital murder. See V.T.C.A., Penal Code, Section 19.-03(a)(2). After the jury made an affirmative finding on both of the special issues submitted under Article 37.071(b)(1) and (2), the trial court imposed the penalty of death. This case is before us on direct appeal.

Although appellant does not contest the sufficiency of the evidence, a brief recitation of the facts will prove helpful to a consideration of his first three points of error. Sometime between the afternoon of March 15, 1987 and the morning of March 16, Fred and Mildred Finch were brutally murdered in their home in Dallas, Texas. Both victims suffered numerous stab wounds and Fred Finch's dead body was sodomized. Evidently, their attacker had gained entrance by prying out an air conditioning unit from a side window. Appellant's fingerprints were found on the window unit, on the window, on the screen removed from the window, and inside the house. Missing from the residence were a Rolex watch belonging to Mr. Finch, his

briefcase believed to contain a large amount of cash, a gun and holster, and numerous items of Mr. Finch's clothing. On the morning of March 16 Lonnie Thomas, appellant's brother, was awakened by appellant who asked him to help him move clothing that was subsequently identified as belonging to Fred Finch. At this time Thomas observed blood on appellant's shirt. Appellant was in possession of a hunting knife, and Thomas saw blood and something that looked like meat on the blade. Appellant was also in possession of Mr. Finch's gun, holster, and Rolex watch. Several other individuals saw appellant in possession of Finch's property on the morning of March 16 and then on March 17, including a woman acquaintance and a cousin. Another cousin, Kathy Renee Johnson, saw appellant in possession of several items of Finch's clothing on March 17 at the home where appellant was staying. Appellant moved the property to the residence of another cousin, and on March 18 Kathy Johnson saw the same property at that residence. Several articles of Finch's clothes had been monogrammed, and when Kathy Johnson, who had heard about the Finchs' murders, saw the initials "FF" on these clothes, she decided that they belonged to Mr. Finch. She helped move the clothing to a dump site, where the items were subsequently recovered by the police. On March 18 she called the Dallas Crime Stoppers Program and talked with someone there for 10 to 15 minutes.

The conversation was recorded. Johnson was referred to a police officer with whom she spoke and to whom she gave two statements. On the evening of March 18 appellant and his mother were watching television when a report was aired concerning the murders. At this time appellant admitted to family members present that he had committed the murders. Appellant was arrested that evening.

This appeal is from the conviction and death sentence assessed for the capital murder of Mrs. Finch.[1] Prior to the trial appellant applied to the District Court for a subpoena duces tecum to compel the production from Dallas Crime Stoppers of any information pertaining to the deaths of Mr. and Mrs. Finch, including the names of informants and the tape recording of Kathy Johnson.[2] Appellant's application was quashed on the ground that the requested information was deemed confidential and could not be released without a specific court order from the supreme court pursuant to Tex.Rev.Civ.Stat.Ann., Article 4413(50), Sections 6 and 11 (now V.T.C.A., Government Code, Sections 414.007 and 414.008, for which see below). Appellant sought extraordinary relief in our Court and the Texas Supreme Court. Relief was denied, even though Johnson expressly waived any right to nondisclosure. During trial, after the examination of witness Johnson, appellant properly moved for the production of the tape recording,[3] but the

---

1. Appellant had been previously tried, convicted, and assessed a death sentence for the capital murder of Mr. Finch. However, the prior proceeding was remanded for retrial by the court because one of the jurors deciding the case was absolutely disqualified by Texas law to serve on the jury. *Thomas v. State,* 796 S.W.2d 196 (Tex. Cr.App.1990).

2. Article 39.14, V.A.C.C.P., provides in pertinent part:

   Upon motion of the defendant showing good cause therefore and upon notice to the other parties, the court in which an action is pending may order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant (except written statements of witnesses and except the work

product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any agencies....

3. Tex.R.Crim.Ev. 614 provides in pertinent part:

   (a) **Motion for production.** After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their posses-

court denied his motion, ruling that the governing statute prohibited production. It appears from the context of appellant's remarks to the court that appellant urged the Court to declare the statute unconstitutional. The Court refused.

In points of error one, two, and three, appellant complains of the actions of the trial court summarized above and asks us to find the Crime Stoppers statute unconstitutional. He argues that he has been denied several rights of constitutional dimension, including the right to effective representation, the right to confront and cross-examine witnesses, and the right to due process of law. The statutes to which appellant refers us, V.T.C.A., Government Code, Sections 414.007 and 414.008, provide as follows:

> **Section 414.007. Confidentiality of Council Records** Council records relating to reports of criminal acts are confidential.
>
> **Section 414.008. Privileged Information**
>
> (a) Evidence of a communication between a person submitting a report of a criminal act to the council or a local crime stoppers program and the person who accepted the report on behalf of the council or local crime stoppers program is not admissible in a court or an administrative proceeding.
>
> (b) Records of the council or a local crime stoppers program concerning a report of criminal activity may not be compelled to be produced before a court or other tribunal except on the order of the supreme court.

The council to which the statute refers is the Crime Stoppers Advisory Council, a division of the executive branch whose primary function is to promote and assist local crime stoppers programs. A "local crime stoppers program" is defined [4] as a private,

nonprofit organization which accepts donations and pays rewards for the report of information concerning criminal activity. A local program operates less than statewide and forwards the reported information to an appropriate law enforcement agency.

Appellant has three primary contentions. First, he claims that the statute is unconstitutional in that it denies him a right to effectively cross-examine Kathy Johnson. Possession of the Crime Stoppers tape-recording would, he avers, allow him to completely discredit her trial testimony. Second, appellant claims that access to the names of other informants who contacted Crime Stoppers with information about the Finch's murders might lead to unspecified exculpatory or impeachment material. He claims that failure to release the requested information violates his due process rights. Third, appellant contends that the refusal of Crime Stoppers to release the tape-recording of Johnson vitiates his right to meaningful review of his claims because a copy of the recording was not available for inclusion in the record which was transmitted to this Court.

In reply, the State contends that appellant's right to confront and cross-examine Johnson was not violated because appellant had the unrestricted opportunity to cross-examine the witness at trial. In addition, the State points out that two prior statements of the witness given to the police were available to appellant for purposes of impeachment. If there was a constitutional error, the State contends that it was harmless because major portions of her testimony were corroborated by the undisputed recovery of the property to which she testified and because she was, in fact, available for impeachment through her prior statements to the police.

---

sion and that relates to the subject matter concerning which the witness has testified.

\* \* \* \* \* \*

(f) **Definition.** As used in this rule, a "statement" of a witness means:

\* \* \* \* \* \*

(2) a substantially verbatim recital of an oral statement that is recorded contemporaneously

with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof....

4. V.T.C.A., Government Code, Section 414.001(2).

We first review the relevant constitutional principles and case precedents. The constitutional provisions invoked by appellant are the Sixth and Fourteenth Amendments to the United States Constitution. The Sixth Amendment guarantees to the accused in a criminal prosecution several rights, including the right to confront the witnesses against him (the Confrontation Clause).[5] The Fourteenth Amendment provides that no state may deprive a person of life, liberty, or property without due process of law.[6] It is in the context of the Sixth Amendment that we discuss whether appellant's right to confront and cross-examine Kathy Johnson was abridged, and it is in the context of the Fourteenth Amendment that we discuss whether appellant's due process rights—in this case, his right to a fair trial—were abridged.

"The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him,[7] and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40, 53 (1987). Cases involving the Confrontation Clause fall into two broad categories, the first concerning the admission at trial of out-of-court statements, and the second concerning restrictions put on cross-examination by law or the trial court. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 18 (1985). See also *Ritchie*, 480 U.S. at 51, 107 S.Ct. at 998. Appellant's Confrontation Clause complaint in the instant case falls into the second category.

The seminal case implicated by appellant's complaint in the instant case is *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis* the State moved for a protective order prior to trial to prevent reference to the juvenile record of a crucial prosecution witness. Defendant's counsel, opposing the motion, argued that he wished to refer to the record on cross-examination in order to show that, because the witness was on probation at the time of the offense alleged against the defendant, the witness may have misidentified the defendant out of fear that the witness's probation would be revoked or because the witness wished to shift attention away from himself. The trial court granted the State's motion, relying on an Alaskan statute which made juvenile offender records confidential. During trial counsel attempted to elicit from the witness his state of mind but, as the defendant argued on appeal, counsel's attempt was ineffective, denying him a right to a meaningful confrontation with the adverse witness. The United States Supreme Court agreed, concluding that the State's interest in protecting the juvenile offender from suffering unnecessarily for his youthful transgressions must give way before the defendant's right to confrontation.

The Supreme Court revisited *Davis* in *Ritchie*, supra, 480 U.S. 39, 107 S.Ct. 989. In *Ritchie* the defendant was charged with the sexual abuse of his daughter. During pretrial discovery, defendant's counsel sought release of records maintained by a Pennsylvania child protective agency which pertained to a prior investigation of child abuse that had been reported by an unidentified source. The agency refused to comply with counsel's subpoena. It relied on statutory authority which made the records confidential subject to specified exceptions, one of which provided that records could be disclosed to a court subject to a court order. Counsel moved for sanctions against the agency, arguing that the files might contain the names of favorable witnesses and other unspecified exculpatory material.

---

5. See also Tex. Const. Art. I, Section 10.

6. See also Tex. Const. Art. I, Section 19.

7. This right is not absolute. In *Maryland v. Craig*, 497 U.S. 836, ——, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666, 685 (1990), the United States Supreme Court held that if the State makes an adequate showing of necessity, a child witness in a child abuse case may testify against a defendant in the absence of face-to-face confrontation. Thus, the court found that the Sixth Amendment to the United States Constitution does not guarantee absolute physical confrontation. In *Gonzales v. State*, 818 S.W.2d 756 (Tex. Cr.App.1991), we adopted the court's holding in *Craig* and further found that the Texas Constitution did not guarantee absolute face-to-face confrontation.

The trial court denied the motion without examining all the files, and the files were never produced. During trial the prosecution's main witness was the defendant's daughter. Defendant's counsel was given full scope for cross-examination. The defendant was convicted. The Pennsylvania Supreme Court, relying in part on the *Davis* decision, reversed, holding that the defendant had been denied his right to confrontation and his right to compulsory process. It further held that defendant was entitled to review the entire contents of the sought-after records.

The United States Supreme Court reversed in part, affirmed in part, and remanded for further proceedings. A plurality held that there was no Confrontation Clause violation. *Ritchie*, 480 U.S. at 54, 107 S.Ct. at 1000. In the view of the plurality, the constitutional error in *Davis* was not that Alaska had made certain records confidential; rather, the error consisted of denying the defendant the right to cross-examine a witness about facts concerning the witness' Juvenile Record from which the jury could draw inferences about the witness' reliability. In *Ritchie* the trial court placed no such limitation on defendant's counsel. If, the plurality noted, it were to accept the Pennsylvania Supreme Court's interpretation of *Davis,* the effect would be to find that the Confrontation Clause constitutionally compelled pretrial discovery, contrary to settled precedent holding that the Confrontation Clause is basically a *trial* right. *Id.* at 52, 94 S.Ct. at 999.

Justice Blackmun considered the plurality's view of the Confrontation Clause to be too narrow. Justice Blackmun was of the view that a pretrial discovery ruling could violate confrontation rights if it limited the *effectiveness* of cross-examination. Although he stated that "[t]here are cases, perhaps most of them, where simple questioning of a witness will satisfy the purposes of cross-examination," *Id.* at 62, 107 S.Ct. at 1004 he opined that there would be other cases where simple questioning would not undermine a witness' credibility and in fact might do actual injury. Justice Blackmun then analyzed the *Davis* case from the perspective of the effectiveness of the cross-examination.

Justice Blackmun recognized the overriding difference between *Davis* and *Ritchie:* in *Davis* the defendant was not denied discovery of the materials he sought to use, whereas in *Ritchie* defendant was prohibited from the outset from even seeing the materials. But Justice Blackmun regarded this difference as merely "technical"; we do not. Denial of discovery implicates the concept of materiality, discussed below, and demands an analysis along due process lines. See *Quinones v. State*, 592 S.W.2d 933 (Tex.Crim.App.1980), cert. denied 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). But if discovery is not denied, it is the limitation on the use of discovery products that triggers a Confrontation Clause analysis.

An examination of the record in this case convinces us that there was no violation of appellant's right to confrontation. Among the various motions filed with the trial court was the state's motion in limine relating to crime stoppers information. The court granted the motion, which prevented the defendant from mentioning any matter regarding the inability of the defense to obtain crime stoppers records. Defendant did not object to the granting of the motion, for the obvious reason that it did not limit defendant's questioning with respect to the crime stoppers information.[8] During trial, other than routine evidentiary rulings, the trial court placed no limitation on counsel's examination of Kathy Johnson. It is evident from the record, and appellant admits,[9] that he was successful in impeaching the witness despite the lack of the crimestoppers information. Appellant complains that he could have been more successful if he had access to the material;

---

8. In fact, the court informed the defendant that he could ask a witness if the witness had called "'Crimestoppers' and report this—and that sort of thing." Statement of Facts, Vol. 27, p. 4

9. Appellant's brief, p. 24.

however, in our view, "the Confrontation Clause only guarantees an **opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Fensterer,* 474 U.S. at 20, 106 S.Ct. at 294 (emphasis in original). In short, appellant has not shown a Confrontation Clause violation.

Appellant's due process complaint amounts to a claim that because he was denied access to the information obtained by Dallas Crime Stoppers he was denied a fair trial. A majority of the *Ritchie* court observed that the "Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, [and] we adopt a due process analysis for purposes of this case." *Id.* 480 U.S. at 56, 107 S.Ct. at 1001. A review of those precedents leads us to a conclusion substantially the same as that reached by the *Ritchie* court under the facts of that case.[10]

The United States Supreme Court held in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, at 1196–97, 10 L.Ed.2d 215, 218 (1963), that the prosecution violates a defendant's due process when it suppresses, upon request, evidence in its possession favorable to an accused "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "Brady"

evidence includes both exculpatory and impeachment evidence. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* 473 U.S. at 682, 105 S.Ct. at 3383.

Of course, at this point, it is impossible to say whether or not the information in the possession of the Dallas Crime Stoppers program or the Dallas Police Department rises to the level of being material. The State asserts that the District Attorney's office never had in its possession the tape recording of Kathy Johnson,[11] and, therefore, neither the attorneys for the State, defense counsel, nor the trial court heard the tape recording. We presume from the trial court's ruling on appellant's pretrial motion that other information pertaining to informants was not seen by the trial parties or the court.

The State contends that the crime stoppers statute serves a compelling state purpose which justifies the infringement on appellant's fundamental right to a fair trial. The purpose served is to "foster the detection of crime and encourage persons to report information about criminal

---

**10.** We realize that *Ritchie* involved the suppression of evidence via a pretrial motion. In the instant case, we confront both a pretrial and trial motion. We find certain dicta in *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 352 (1976), persuasive in resolving the issue of whether our holding today should extend to both pretrial and trial motions for discovery of "Brady" material. The Court noted that it was dealing neither with the scope of Federal discovery rules nor the wisdom of amending those rules. Rather, it was dealing with the defendant's right to a fair trial. *Id.,* 427 U.S. at 107, 96 S.Ct. at 2399. The Court observed that the issue of nondisclosure of "Brady" material could arise after trial, when the trial court might be required to determine whether nondisclosure deprived a defendant of due process, or "in advance of trial, and perhaps during the course of a trial as well...." *Id.* We agree with the *Agurs* court and find that our resolution of the due process issues before as

extends both to pretrial and trial motions for production of possible exculpatory or impeachment evidence.

**11.** In its brief, pp. 52–53, the State suggests two additional issues: first, that with respect to appellant's trial motion, the State may not have been in possession of the Kathy Johnson tape recording, as the term "possession" is used in Tex.R.Ev. 614; and, second, that with respect to appellant's pretrial motion, Dallas Crimestoppers may not be an agency of the State as that term is used in Article 39.14, V.A.C.C.P. We find each issue to be inadequately briefed and refuse to address them except to observe that even if the State were correct, appellant would be entitled to have a subpoena duces tecum issued to the Dallas Crime Stoppers local program in accordance with the procedure we have set out below, *infra,* pp. 113–114. See Tex.R.App.Proc.R. 74(f) and Articles 24.01 and Article 24.02, V.A.C.C.P.

acts...." V.T.C.A., Government Code, Section 414.005(2). See also *People v. Brown*, 151 Ill.App.3d 446, 104 Ill.Dec. 353, 502 N.E.2d 850, 853 (Ill.App. 2 Dist.1986). Administrative rules adopted by the Crime Stoppers Advisory Council further illuminate the purpose and methods of local crime stoppers programs.

1 Tex.Admin.Code Section 3.721(b). Local crime stoppers programs have been highly effective and successful due to their reliance on local initiative and local citizen participation.

.    .    .    .    .

1 Tex.Admin.Code Section 3.722. The Crime Stoppers Advisory Council will assist local crime stoppers programs by: (2) encouraging persons to come forward with information about criminal activity[.]

.    .    .    .    .

1 Tex.Admin.Code Section 7.741(c). The Council recognizes that, under ideal conditions, all citizens would report information about crimes to the proper authorities. It also recognizes, that for a variety of reasons—fear of involvement and apathy being paramount among them—many citizens do not come forth with such information. Programs which preserve the anonymity of the caller and also provide financial rewards go far to counteract these reasons.

Appellant concedes that the public has an interest in law enforcement. However, he argues in the alternative that: either, the statute is unconstitutional on its face because the interest is not compelling enough to justify the statutory privilege of nondisclosure (See *United States v. Nixon*, 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039, 1066 (1974)—executive privilege must give way to court's duty to vindicate Sixth Amendment rights); or, that the statute is unconstitutional as applied to him because when, as in appellant's case, at least with respect to the tape recording of Kathy Johnson, the informant chooses to come forward and testify and then waives

any right to nondisclosure, the rationale for nondisclosure evaporates.

■ As to the former contention of appellant, we cannot agree. The State's interest in law enforcement is, indeed, quite compelling. We find that such interest is sufficient to justify both State and local crime stoppers programs, and, further, that such interest justifies the confidentiality provisions of the current statute, although we limit their applicability in our holding today. As to appellant's latter contention, appellant recognizes that the Legislature has chosen not to allow for waiver of nondisclosure of information given to a local crime stoppers program, and we see no constitutional infirmity in that decision.

■ The problem, as we see it, is that the confidentiality provisions of the crime stoppers statute, as interpreted by the trial court and as applied to appellant, reach too far. They operate to totally bar a defendant access to information that may be material, whether in the possession of the State or any other person. Denial of access to information which would have a reasonable probability of affecting the outcome of a defendant's trial abridges a defendant's due process rights and undermines the court's duty to vindicate Sixth Amendment rights. There is no interest that could be asserted by the Legislature that would be compelling enough to justify such a result.

■ In fact, the language of the crime stoppers statute indicates that the Legislature intended otherwise. As the United States Supreme Court observed about the Pennsylvania statute in *Ritchie*,[12] and as we observe about the Texas statute under consideration here, by allowing for production of crime stoppers records pursuant to a court order, the Legislature clearly contemplates that the confidentiality provisions must yield in some cases. We find that under the narrow circumstance of this case production is constitutionally required.

We find that Kenneth Thomas has the right to *production* of crime stoppers information in possession of the local Dallas

---

**12.** *Ritchie*, 480 U.S. at 58, 107 S.Ct. at 1001–02.

Crime Stoppers program, the Crime Stoppers Advisory Council, or the Dallas County District Attorney's Office.

However, to allow a defendant unlimited *access* to the information would unnecessarily compromise the State's interest in fostering law enforcement and its efforts to do so by protecting the identity of crime stoppers informants. We believe that both the State's interest and the defendant's interest can be served by providing that crime stoppers information should be inspected by the trial court *in camera*. Neither the attorneys for the State or defendant should be present. It will be the responsibility of the court to determine if the produced information contains Brady evidence. The court must, in its sound discretion, take steps to ensure that, to the extent possible, the information remains confidential. If information is deemed material at the time it is inspected or at any future stage of the trial, it must be released to the defendant pursuant to well-settled precedent.[13] At the conclusion of trial, the information shall be sealed and made part of the record.

We realize that the procedure set forth today is not available in the case before us. However, we believe that appellant's due process concerns can be properly dealt with in the following manner. This appeal is abated and the cause remanded to the trial court. The trial court is instructed to direct the District Clerk to issue a subpoena duces tecum or otherwise summon the current supervisor of the Dallas Crime Stoppers program, and the custodian of records for the both the Crime Stoppers Advisory Council and the Dallas County District Attorney's Office directing such persons to bring and produce to the court those items that have been previously requested for production by appellant in his motion for an order for production filed with the District Clerk of Dallas County on July 21, 1987. After the parties to whom the subpoenas are directed respond, the trial court shall make findings of fact regarding the availability of the information and its materiali-

ty. The *information shall then be sealed* and forwarded to the clerk of this court, at which time we will review the findings of the trial court and take any other further action that is necessary for a disposition of this appeal.

IT IS SO ORDERED.

---

**13.** The *Ritchie* court established just such a procedure. In addition, we fashioned a similar remedy in *Texas Board of Pardons and Paroles v. Miller,* 590 S.W.2d 142 (Tex.Cr.App.1979).