**Alonzo D. DIXON, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–95–062–CR, 2–95–063–CR.**

Court of Appeals of Texas,
Fort Worth.

May 16, 1996.

Law Offices of Michael Logan Ware, and Michael Logan Ware, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellate Section, and Anne E. Swenson, Anne Box and Christy Jack, Assistants, Fort Worth, for appellee.

Before CAYCE, C.J., and LIVINGSTON and RICHARDS, JJ.

## OPINION ON REHEARING

CAYCE, Chief Justice.

Appellant's motion for rehearing is granted. Our prior opinion and judgment of March 28, 1996 are withdrawn, and the following substituted therefor.

Appellant Alonzo D. Dixon was convicted by a jury of incest, indecent exposure with a child, and aggravated sexual assault. These offenses were alleged in two separate indictments, but were tried together. The trial court sentenced Dixon to incarceration for twenty-five years, twenty-five years, and forty-five years, respectively, to be served concurrently.

On appeal, Dixon raises five points of error contending that the State was improperly allowed to cross-examine a defense witness concerning two felony charges pending against the witness; the court erred in overruling his motion for mistrial following an allegedly improper comment in the State's jury argument; the State made two fundamental errors in its comments during jury

argument; and his due process rights were violated when the trial court denied him access to certain confidential records. We overrule these points of error and affirm the judgments of conviction.

In June of 1994, Y.L.B., Dixon's eleven-year-old daughter, was visiting Dixon and his fiance, Jo Lucero, at their home in Fort Worth. One afternoon when Dixon and Y.L.B. were home alone, he took her to his bedroom, undressed her, and forced her to have intercourse with him. To subdue her during this assault, he tied her hands to the bed rail.

Later that night, Dixon again assaulted Y.L.B. by first having intercourse with her and then by forcing her to perform oral sex on him. This time Lucero walked in on them and ended the assault. The next morning Lucero took Y.L.B. to the authorities to report the incidents and to the hospital for a physical examination. The examination revealed several physical indicators that Y.L.B. had recently been sexually assaulted and that penetration had occurred.

In his first point of error, Dixon complains that the trial court erred when it permitted the State to improperly impeach Elmer Pelfrey, a defense witness, with the fact that he had charges pending against him for aggravated sexual assault of a child, indecency-fondling of a child, indecent exposure with a child, and incest with a child. Dixon argues that under Texas Rules of Criminal Evidence 608(b) and 609(a), a witness may be impeached with his specific bad acts only if those acts resulted in a final conviction. ·TEX. R.CRIM.EVID. 608(b), 609(a). Therefore, because Pelfrey's charges were not final convictions, Dixon asserts that it was error to allow the State to question him about them.

■ For an issue to be preserved on appeal, there must be a timely objection that specifically states the legal basis for the objection. TEX.R.APP.P. 52(a); *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990). A proper objection must, at the least, inform the trial judge of the basis for the objection and afford him the opportunity to rule on it. *Kemp v. State,* 846 S.W.2d 289, 302 (Tex. Crim.App.1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993); *Zil-*

*lender v. State,* 557 S.W.2d 515, 517 (Tex. Crim.App.1977) (op. on reh'g). The objection should also afford opposing counsel the opportunity to address the merits of the objection in an attempt to remove it. *Kemp,* 846 S.W.2d at 302; *Zillender,* 557 S.W.2d at 517.

Here, immediately before Pelfrey was called to the stand, Pelfrey's attorney requested, in a hearing outside the presence of the jury, that the State not be allowed to ask Pelfrey about two felony indictments that were pending against him on charges of sexual misconduct. Counsel argued that because the charges were not final convictions, they were inadmissible impeachment evidence. The trial court denied this request, holding that the charges were admissible to show "bias and motive." Dixon's attorney remained silent during this hearing.

On ·cross-examination of Pelfrey, the following exchange took place:

> [PROSECUTOR:] Mr. Pelfrey, you presently have two cases pending, don't you?
>
> [DEFENSE COUNSEL:] I'm going to object to that, Your Honor.
>
> THE COURT: For the reasons stated previously, I will overrule the objection.
>
> . . . .
>
> [PROSECUTOR:] You can answer the question, Mr. Pelfrey.
>
> [PELFREY:] Yes.

■ Based on these facts, we find that Dixon waived his complaint about the admission of Pelfrey's pending charges. First, to the extent Dixon is relying on the objections of another attorney to preserve his present complaint, his reliance is misplaced. *See Martinez v. State,* 833 S.W.2d 188, 191 (Tex. App.—Dallas 1992, pet. ref'd) (a defendant who has not voiced his own personal objection or adopted that of his codefendant is foreclosed from relying on the objection of his codefendant to preserve error). There is no indication in the record that Dixon adopted or intended to adopt the objections urged by Pelfrey's attorney in the hearing held immediately before Pelfrey's testimony. Therefore, Dixon cannot use an objection

that he did not advance at trial to preserve his complaint for appellate review. *See id.*

■ Second, the only objection lodged by Dixon himself was a general objection that preserved nothing for our review. *See Fierro v. State,* 706 S.W.2d 310, 317–18 (Tex. Crim.App.1986) (general objection is not sufficient to apprise trial court of complaint urged and thus preserves nothing for review). Although Dixon's objection made the trial court aware that he did not want the State to inquire into Pelfrey's pending charges, it did not inform the court of the specific legal basis for his objection. *See id.; Euziere v. State,* 648 S.W.2d 700, 704 (Tex. Crim.App.1983). Consequently, we find that Dixon waived his present complaint and, accordingly, overrule his first point of error.

■ In his second point of error, Dixon complains that the trial court erred in overruling his motion for mistrial based on the following comment made by the prosecutor during final argument:

> And I think [defense counsel] is living in a perfect world, because in a perfect world, we don't have child molesters. And certainly, if we did have child molesters, we would have eyewitnesses. And those eyewitnesses would bounce themselves right into court and hop up on that witness stand.
>
> But you know what, ladies and gentlemen? This isn't a perfect world. Because in a real world—in a real world, we have child molesters. In the real world, we have people like Mr. Alonzo Dixon, who raped—not just sexually assaulted, not just fondled or touched, but raped their biological daughters.
>
> And in the real world, *Jo Lucero is not going to come to this court and testify against the father of her baby.* And that is a very ugly fact. [Emphasis supplied.]

Dixon objected to the argument on the ground that the remark that Dixon was the father of Lucero's baby was outside the record. The trial court sustained the objection and, upon Dixon's request, instructed the jury to disregard the comment. Dixon then moved for a mistrial, and that motion was denied.

Dixon complains that the statement by the prosecutor that he is the father of Lucero's baby was not cured by the instruction to disregard for two reasons. First, by injecting the "new" fact into the case that Dixon was the father of Lucero's baby, the argument allegedly "neutralized [Dixon's] 'burden of proof' and 'reasonable doubt' arguments concerning the conspicuous absence of a State's key witness [Lucero]." Second, the State's argument allegedly undermined Dixon's defensive theory that Lucero encouraged Y.L.B. to make the criminal allegations against Dixon because Dixon ended his engagement with Lucero.

■ The general appellate presumption is that error in jury argument will be corrected by an instruction to disregard by the trial court. *Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *Cooks v. State,* 844 S.W.2d 697, 727 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Swallow v. State,* 829 S.W.2d 223, 226–27 (Tex.Crim.App.1992). Only in extreme cases where it appears that the argument is clearly calculated to inflame the minds of the jury, and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds, will an instruction to disregard not be sufficient to cure the error. *See Corwin v. State,* 870 S.W.2d 23, 37 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 95, 130 L.Ed.2d 44 (1994); *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Reversible error occurs only when statements to the jury are extreme, manifestly improper, inject harmful facts into the record, or violate a mandatory statute. *Cooks,* 844 S.W.2d at 727; *Gaddis v. State,* 753 S.W.2d 396, 397 (Tex.Crim.App.1988); *Miller v. State,* 741 S.W.2d 382, 392 (Tex.Crim.App.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988).

■ Dixon has failed to bring forward any persuasive reasons why we should not follow the "general appellate presumption that a trial court's instruction to disregard an im-

proper jury argument will be efficacious." *Corwin,* 870 S.W.2d at 37. The instruction to disregard is presumed to have cured the error, and it is Dixon's burden to overcome this presumption. *See id.* Dixon has failed to meet this burden. The jury could have reasonably deduced that Dixon was the father of Lucero's unborn child from the evidence showing that at the time of the offense, Dixon and Lucero were living together, were planning to be married, and Lucero was five months pregnant. Therefore, the prosecutor's comment could not have possibly inflamed the minds of the jury, or had such an effect on their minds that the instruction would not have been efficacious in curing the error. Point of error two is overruled.

■ In points of error three and five, Dixon complains of two other comments made by the prosecutor during jury argument. First, he argues that the prosecutor's statement that Y.L.B. "is one of the most credible witnesses that I have ever had" improperly injected the prosecutor's opinion of Y.L.B.'s credibility into the argument. Second, Dixon asserts that the prosecutor misstated the law when she made the following remarks regarding the defense witness, Pelfrey:

[The defense] brought you a man, Elmer Pelfrey, who got up on this witness stand, and you heard about his pending case; the fact that he is also himself charged with raping a child, the fact that he is charged with indecent exposure, the fact that he is charged with fondling.

And what does that tell you about this man sitting here? Because Elmer is someone that he chooses to associate with.

According to Dixon, this argument improperly urged the jury to consider the pending charges against Pelfrey as substantive evidence even though the trial court allowed the State to present evidence of the charges only for the limited purpose of impeachment.

■ The general rule is that there must be a timely, proper, and specific objection to the prosecutor's complained-of jury argument for a defendant to preserve the complaint for appellate review purposes. *Miller,* 741 S.W.2d at 391. An exception to the general rule is that the improper argument may present a Fourteenth Amendment

due process claim if the prosecutor's argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Id.* However, reversible error occurs only when statements to the jury, either individually or collectively, are so extreme, manifestly improper, inject new and harmful facts into the case, or violate a mandatory statutory provision, that they deprive the accused of a fair and impartial trial. *Id.* at 392.

In the instant case, Dixon did not object in the trial court to either of the prosecutor's comments about which he now complains on appeal. He argues, however, that these errors are fundamental and thus do not require an objection to be preserved. We disagree. Neither comment was so prejudicial as to reflect a violation of due process or due course of law to the extent that it deprived Dixon of a fair and impartial trial. *Id.* We find that an instruction by the trial judge would have been sufficient to cure any error created by either statement. *See id.; Davis v. State,* 894 S.W.2d 471, 474–75 (Tex.App.— Fort Worth 1995, no pet.) (holding that instruction to disregard improper jury argument cured the error). Dixon has thus waived these two complaints. Points of error three and five are overruled.

■ In his fourth and final point of error, Dixon complains that his due process rights were violated when the trial court denied him access to certain records from the Department of Human Services ("DHS") in Lufkin, Texas concerning other claims of sexual abuse against Y.L.B. These records are made confidential by Tex.Fam.Code Ann. § 261.201 (Vernon Supp.Pamph.1996). Citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), and *Thomas v. State,* 837 S.W.2d 106 (Tex.Crim.App.1992), Dixon argues that where confidential information is material to either his guilt or his punishment, he is entitled to access to that information notwithstanding statutory prohibitions. He therefore urges us to examine the sealed records to determine whether they contain material information that is "exculpatory or

relevant to impeachment" and that should have been disclosed to him during trial.

The United States Supreme Court held in *Brady* that the prosecution violates a defendant's due process when it suppresses, upon request, evidence in its possession favorable to an accused "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. *"Brady"* evidence includes both exculpatory and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494.

When a defendant seeks access to information that is protected by a confidentiality statute, a conflict arises between the defendant's rights to due process and the State's interest in maintaining confidentiality. *Ritchie*, 480 U.S. at 60–61, 107 S.Ct. at 1002–03, 94 L.Ed.2d at 59–60. On one hand, denial of access to information that would have a reasonable probability of affecting the outcome of a defendant's trial abridges a defendant's due process rights and undermines the court's duty to vindicate Sixth Amendment rights. *Thomas*, 837 S.W.2d at 113; *see Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. Consequently, a confidentiality statute may not operate to totally bar a defendant access to information, whether in the possession of the State or of any other person, that might be *Brady* material. *Thomas*, 837 S.W.2d at 113.

On the other hand, to allow a defendant unlimited access to the information would unnecessarily compromise the State's interest in protecting the confidentiality of its information. *Ritchie*, 480 U.S. at 60, 107 S.Ct. at 1003, 94 L.Ed.2d at 59; *Thomas*, 837 S.W.2d at 114. The Supreme Court in *Ritchie* noted that the State has a compelling interest in keeping child abuse information confidential so that reluctant victims, relatives, and witnesses will be encouraged to come forward and report the abuse without the fear of general disclosure. *Ritchie*, 480 U.S. at 60–61, 107 S.Ct. at 1003, 94 L.Ed.2d at 59–60.

To balance these competing interests, the trial court must conduct an *in camera* review of the requested information to determine whether it contains any *Brady* material. *Id.* at 60, 107 S.Ct. at 1002–03, 94 L.Ed.2d at 59; *see also Thomas*, 837 S.W.2d at 114 (both State's and defendant's interests can be served by trial court conducting *in camera* review of crime stoppers information). The in-chambers inspection must be conducted "in a manner conducive to 'scrupulous protection against any release or publication of material not found by the court … [to be] relevant to the issues of the trial for which it is sought.'" *Texas Bd. of Pardons & Paroles v. Miller*, 590 S.W.2d 142, 145 (Tex.Crim.App.1979) (orig. proceeding) (quoting *United States v. Nixon*, 418 U.S. 683, 714, 94 S.Ct. 3090, 3111, 41 L.Ed.2d 1039, 1067 (1974)). Neither the State nor the attorney for the defendant should be present. *Thomas*, 837 S.W.2d at 114. If upon inspection the trial court deems any of the information material, the court must release this material information, and no other, to the defendant. *Id.* The decision of whether to make any of the information available to the defendant is a matter of discretion on the part of the trial court and is reviewable under an abuse of discretion standard. *Miller*, 590 S.W.2d at 145; *see also Texas Dep't of Corrections v. Dalehite*, 623 S.W.2d 420, 424 (Tex.Crim.App.1981) (orig. proceeding) (trial court's decision regarding need for disclosure of confidential parole information should be reviewed under abuse of discretion standard).

After reviewing the DHS records, we find that they did not contain any material information that would have had a reasonable probability of affecting the outcome of Dixon's trial. Thus, the trial court did not abuse its discretion when it denied him access to these records. Point of error four is overruled.

Having overruled all five points of error, we affirm the judgments below.