# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00459-CR

**Bradley Wayne Dixon, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
## NO. CR-01-171, HONORABLE MICHAEL J. MCCORMICK, JUDGE PRESIDING

Appellant Bradley Wayne Dixon was a dormitory director at a San Marcos boarding school. Over the course of several months, he committed a number of sex and sex-related offenses against the boys in his charge. Based on this evidence, a jury found him guilty of two counts of aggravated sexual assault of a child,[1] four counts of indecency with a child by contact,[2] one count of sexual performance by a child,[3] and two counts of assault.[4] In four points of error, appellant contends the trial court erred by refusing

---

[1] Tex. Pen. Code Ann. ' 22.021(a)(1)(B)(iii), (2)(B) (West Supp. 2002). The jury assessed punishment for each count at imprisonment for seventy-five years and a $10,000 fine.

[2] Tex. Pen. Code Ann. ' 21.11(a)(1) (West Supp. 2002). The jury assessed punishment for three of these counts at imprisonment for twenty years and a $10,000 fine. For the fourth count, the jury assessed a ten-year prison term and a $10,000 fine.

[3] Tex. Pen. Code Ann. ' 43.25(b) (West Supp. 2002). The jury assessed punishment for this offense at imprisonment for ten years and a $10,000 fine.

[4] Tex. Pen. Code Ann. ' 22.01(a)(3) (West Supp. 2002). The jury assessed a $500 fine for each count.

to order the State to provide impeachment evidence to the defense, by denying the defense access to evidence in the court=s possession, and by admitting at the punishment stage evidence that was unlawfully seized and of which proper notice had not been given. We overrule these points and affirm the judgment of conviction.

### *Juvenile records*

In point of error two, appellant contends his due process and confrontation rights were violated when the court refused to order the State to Aprovide the juvenile records (if any) of the minor witnesses the State intended to call during trial.@ *See* U.S. Const. amends. V, VI, XIV. More specifically, appellant argues that the court should have granted his request for an order directing the State to search juvenile court records to determine if any of its intended witnesses had been found to have engaged in delinquent conduct involving acts of moral turpitude. The court refused this request, saying it was Anot ordering the prosecutor to go seek and search out every record possession of the State of Texas.@ The court did order the prosecution to make available to the defense any evidence in its possession bearing on the credibility of its witnesses.

No Sixth Amendment violation is shown. The right to confrontation is a trial right implicated, for example, when a defendant=s cross-examination of a prosecution witness is unduly limited by the trial court. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (plurality op.); *Thomas v. State*, 837 S.W.2d 106, 111 (Tex. Crim. App. 1992). Appellant does not complain that he was denied the opportunity to use a witness=s juvenile record for impeachment, but rather that he was denied the opportunity to learn if any such records exist. In effect, appellant urges that he did not receive a fair trial because he was denied discovery. This does not raise a Confrontation Clause issue, but rather a due process issue under the Fourteenth Amendment. *Ritchie*, 480 U.S. at 56; *Thomas*, 837 S.W.2d at 112.

Under the Due Process Clause, the State has an affirmative duty to disclose evidence in its possession that is favorable to the accused and material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). Impeachment evidence is included within the scope of the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676 (1985). *Brady* does not require disclosure of information that the State does not have in its possession and that is not known to exist. *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990); *Thompson v. State*, 612 S.W.2d 925, 928 (Tex. Crim. App. 1981).

In this case, the prosecutor told the court that the State did not have any juvenile court records involving the complainant-witnesses. Appellant asserts that the prosecutor was merely claiming that she did not personally possess such records, and that the trial record demonstrates that the State=s Aprosecuting team@ did have the records. *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *Ex parte Adams*, 768 S.W.2d 281, 291-92 (Tex. Crim. App. 1989) (*Brady* applies to evidence possessed

**3**

by any member of Aprosecution team,@ including both investigators and prosecutors); *see also Kyles v. Whitley*, 514 U.S. 419, 438 (1995) (prosecutor=s failure to disclose *Brady* material in possession of police not excused by lack of personal knowledge).  Appellant does not refer us to any portion of the record supporting this assertion, and our review discloses no evidence that any investigator or prosecutor was in possession of any undisclosed juvenile court record of any witness.

Appellant relies on the opinion in *Thomas*.  In that case, a capital murder defendant sought the production of crime stoppers information pertaining to the offense, including the names of informants and a tape recording of a telephone call.  *Thomas*, 837 S.W.2d at 108.  The trial court denied the request, citing statutes providing that crime stoppers reports are privileged and confidential.  *Id*. at 108-09; *see* Tex. Gov=t Code Ann. '' 414.007, .008 (West Supp. 2002).  The court of criminal appeals, however, concluded that the defendant had a due process right to the production of the material he sought that was in the possession of the local crime stoppers program, the crime stoppers advisory counsel, or the district attorney=s office.  *Thomas*, 837 S.W.2d at 113-14.  The court went on to prescribe a procedure by which the crime stoppers information was to be inspected by the trial court *in camera* to determine if it contained *Brady* material.  *Id*. at 114.

Appellant urges that the procedure outlined in *Thomas* should have been employed by the trial court in this cause.  There is, however, a crucial distinction between *Thomas* and the case before us.  In *Thomas*, the information sought by the defendant was known to exist; it was a matter of record that crime stoppers tips had been received, and that one person in particular had spoken to a crime stoppers operator for fifteen minutes.  *Id*. at 108.  In this case, on the other hand, there was no showing that any potential

**4**

State witness had been adjudicated delinquent. The court of criminal appeals did not hold in *Thomas*, as appellant would have us hold here, that the prosecutor was obligated to search for information not known to exist.

*Brady* does not require the State to seek out evidence for the defendant=s use. *Palmer v. State*, 902 S.W.2d 561, 563 (Tex. App.CHouston [1st Dist.] 1995, no pet.). The district court did not violate appellant=s due process rights by refusing to order a search for juvenile records that were not in the State=s possession and were not shown to exist. Point of error two is overruled.

### *Counselor=s notes*

Appellant raises another *Brady*-related claim in his fourth point of error. On the day testimony was scheduled to begin, appellant secured the issuance of a subpoena duces tecum directing the school counselor, Jan Millard, to appear and bring with her Aall notes or statements concerning [her] investigation and interviews of the students concerning the alleged sexual abuse by [appellant].@ Millard moved to quash the subpoena on the ground that the notes were privileged. At a hearing on the motion, it was determined that Millard had three pages of notes memorializing conversations she had with boys at the school regarding the accusations against appellant. It was agreed by all parties that Millard=s notes would be given to the trial court for *in camera* inspection. It was further agreed that if the court determined during the course of the trial that any portion of the notes was relevant to the credibility of a witness, the notes would be made available to both appellant and the State. Otherwise, the notes would remain sealed.

During the trial testimony of a boy sexually assaulted by appellant, the jury was retired and an unrecorded meeting in chambers took place. After the judge and attorneys returned to the courtroom, the judge announced:

THE COURT: I want the record to reflect I have reviewed matters delivered to me for in camera inspection from Dr. Jan Millard at a hearing held this morning on a motion to quash subpoena, materials delivered to me, part of them relate to this witness. I have examined those documents. I have shown them to counsel for the defense and it=s my opinion that those documents are not inconsistent with the testimony that=s been given here and there=s nothing exculpatory in those matters and they will remain sealed and delivered to the Appellate Court if and when it becomes necessary.

[Defense counsel]: . . . I feel, looking at the notes by Ms. Millard on one page you allowed me to look at, that there is insufficient data for you to make a ruling on exactly what was said and context of it. Therefore, without me having the ability to take that piece of paper and ask [the witness] what exactly happened and to supply the context for those notes we will never know if it=s either exculpatory, inconsistent with prior statement or exculpatory. I=m asking for the Court the ability to question this witness who these notes were about to put them in a proper context with, where the Court can make an educated ruling.

THE COURT: Denied.

Appellant asserts that the district court abridged his due process and confrontation rights by denying him access to Millard=s notes regarding her conversation with this witness.[5] The record reflects, however, that appellant was not denied access to the notes. As suggested by the opinion in *Thomas* on

---

[5] Appellant does not contend he was denied access to notes relevant to any other witness=s testimony.

which appellant relies, Millard=s notes were delivered to the trial court for *in camera* inspection. *Thomas*, 837 S.W.2d at 113-14. Going beyond the procedure suggested in *Thomas*, the trial court showed defense counsel Millard=s notes regarding her conversation with the witness even though the court had determined that the notes were not inconsistent with the boy=s testimony and hence were not material. *See id*. at 114. From his remarks to the court, it is obvious that counsel also found nothing in the notes inconsistent with the witness=s testimony. He did not dispute the court=s conclusion that the notes were immaterial on their face. Because the notes were produced, examined by counsel, and found to be immaterial, no due process violation is shown. Because the notes had no value as impeachment, appellant=s confrontation right was not violated.

Millard=s sealed notes are not included in the appellate record. Appellant=s counsel states in his brief that he has made Aconsiderable effort@ to locate the notes and that they are apparently lost.[6] He urges that appellant is thus entitled to a new trial pursuant to rule 34.6(f). Tex. R. App. P. 34.6(f). The State argues that the notes are not necessary to the appeal=s resolution. *Id*. rule 34.6(f)(3); *see Gomez v. State*, 35 S.W.3d 746, 749 (Tex. App.CHouston [1st Dist.] 2000, pet. ref=d). We have already explained that the record before us shows that appellant=s trial counsel was given the opportunity to examine the relevant notes and did not dispute the trial court=s determination that they had no impeachment value and were immaterial. Under the circumstances, we are unpersuaded by appellant=s

---

[6] Counsel states that he contacted the district clerk, the court reporter, and the Clerk of this Court in an effort to locate the notes.

argument that an examination of the notes is necessary to properly resolve this point of error. Point of error four is overruled.

*Punishment evidence*

Appellant=s computer was seized in January 2000 by police executing a warrant to search his residence at the boarding school. A large quantity of child pornography was found stored in the computer. Also seized during this search was a videotape showing one of the boys at the school masturbating. In October 2000, employees of the school discovered over one hundred floppy disks in the ceiling of what had been appellant=s residence. These disks also contained child pornography. During the punishment stage of appellant=s trial, the videotape and a sampling of the pornographic images, movies, and obscene stories found stored in appellant=s computer and on the floppy disks were introduced in evidence by the State. Appellant challenges the admission of some of this evidence in his two remaining points of error.

### 1. Probable cause

Appellant contends that insofar as it authorized the seizure of his computer (and the images stored therein) and the videotape, the search warrant was not supported by probable cause.[7] A warrant to seize evidence of a crime must be based on an affidavit showing probable cause to believe that (1) a specific

---

[7] Although appellant=s brief does not draw this distinction, the record shows that half of the still images and the two obscene stories introduced in evidence were taken from the disks discovered in October. The validity of the search warrant is immaterial to the admissibility of this evidence, to which appellant did not object at trial.

offense has been committed, (2) the property to be searched for and seized constitutes evidence of that offense or that a particular person committed that offense, and (3) the property to be searched for and seized is located at the place to be searched. Tex. Code Crim. Proc. Ann. art. 18.01(c) (West Supp. 2002); *see id*. art. 18.02(10). Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.CAustin 1998, no pet.). We do not conduct a de novo review of a search warrant affidavit. Instead, we give the issuing magistrate=s determination of probable cause great deference and will sustain that determination so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Bradley*, 966 S.W.2d at 873 (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

The supporting affidavit in this case was executed by Officer Mark Graves of the Hays County Sheriff=s Department. In the affidavit, Graves stated his belief that appellant had committed the offense of indecency with a child and that evidence of that offense, including photographs, videotapes, and computer files showing sexual activities involving children, might be found in appellant=s residence at the boarding school. As probable cause for this belief, Graves cited:

- $ His seven years of experience as a peace officer, including Aspecialized training and experience in the investigation of sexual assault and child abuse.@

- $ Information received on January 15, 2000, from the executive vice president of the boarding school to the effect that students had reported acts of improper sexual conduct by appellant.

$ His subsequent investigation, during which he received five written statements by students (who were named in the officer=s offense report) who said that appellant Ahad either touched their penis or masturbated their penis, some to the point of ejaculation.@ These acts were said to have been committed Afrom 1998 through late 1999.@

$ His discovery Athrough interviews with victims and witnesses that pornography confiscated by [appellant] from boarding school students and/or shown by [appellant] to boarding school students was common information between the victims and witnesses interviewed by the Affiant.@

$ Information received from appellant=s roommate that appellant Amaintains a computer system in his bedroom@ and that he Aroutinely keeps his bedroom door locked.@

$ Certain Acharacteristics@ of persons whose Asexual objects@ are children, which Graves said he had learned Athrough his training and experience, along with published information by noted author Seth L. Goldstein who wrote a practical guide to the assessment, investigation and intervention titled >The Sexual Exploitation of Children.=@ Among these characteristics were the collection and preservation of sexually explicit photographs and videotapes, including photographs of the child victims, and the keeping of name lists and diaries describing sexual encounters.

Appellant first argues that the listed characteristics common to sexual abusers of children were merely conclusory statements not shown by the affidavit to be reliable. Appellant refers us to opinions discussing the evaluation of information received from anonymous informers. *See Gates*, 462 U.S. at 238-39; *Johnson v. State*, 803 S.W.2d 272, 288 (Tex. Crim. App. 1990). None of the information in the challenged affidavit was from an anonymous source. The listing of characteristics to which appellant directs his complaint were not merely the conclusions of the affiant or anonymous allegations, but were the product of Graves=s training and experience in the investigation of sexual assault and child abuse cases, which

included the review of a published article by a named author. Appellant refers us to no authority holding that such information cannot be relied on in making the probable cause determination.

Appellant further argues that the affidavit did not state probable cause to believe that the items to be searched for and seized could be found at appellant=s residence at the time the warrant issued. The affidavit was presented to the magistrate and the warrant issued on January 17, 2000. The alleged acts of indecency were said to have occurred Afrom 1998 through late 1999.@ Appellant asserts that the affidavit does not assert any facts that would justify an inference that evidence of these crimes would still be found in appellant=s residence. This argument ignores the statements in the affidavit that sexual abusers of children commonly collect and keep pornography, the names of their victims, and diaries describing their unlawful activities.

Considering the affidavit as a whole and the reasonable inferences it supports, we believe that the issuing magistrate had a substantial basis for concluding that a search of appellant=s residence at the school would uncover evidence tending to show that appellant was guilty of acts of sexual indecency with children, including videotapes and computer files. The district court did not err by overruling appellant=s challenge to the adequacy of the probable cause affidavit. Point of error three is overruled.

### 2. Notice

Appellant also sought to exclude the videotape on the ground that he was not given proper notice of the State=s intent to use it as evidence.[8] Upon request, the State must notify the accused of the

---

[8] At trial, defense counsel described the tape as follows: AWhat the tape shows was [appellant]

evidence it intends to introduce at the punishment stage of trial, including evidence of extraneous crimes or bad acts. Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(g) (West Supp. 2002). Appellant asserts that he was not notified that the State intended to introduce the videotape in question, and therefore the district court erred by admitting the videotape in evidence over his objection.

and a boy at the school, basically. [Appellant] and the boy come in. He sits the boy down, hands him lotion. They speak and he proceeds to leave and the camera records the boy masturbating.@ According to the prosecutor, the boy did not know he was being videotaped.

Eighteen days before trial began, the State filed its written Aanswer to defendant=s motion to disclose evidence of other crimes, wrongs or bad acts.@[9] Among other things, this notice informed appellant that the State intended to offer evidence that A[d]uring his employment at the [boarding school], [appellant] did commit the offense of POSSESSION OF CHILD PORNOGRAPHY, as alleged in the indictment in CR01-171.@ This was a reference to the indictment in this cause, which at the time the notice was filed included two counts accusing appellant of possessing child pornography. *See* Tex. Pen. Code Ann. ' 43.26 (West Supp. 2002). These counts were later severed from the indictment on appellant=s motion.[10] *See* Tex. Pen. Code Ann. ' 3.04 (West Supp. 2002). One of the severed counts alleged that appellant, on or about January 16, 2000:

> knowingly and intentionally possess[ed] visual material that visually depicted a child, whose identity is unknown to the Grand Jury, younger than 18 years of age at the time the image of the child was made, who was engaging in sexual conduct, to wit: videotapes and computer images, and the said [appellant] knew that the material depicted the said child engaging in sexual conduct.

---

[9] The motion does not appear in the record, but we infer from the State=s response that it was an omnibus motion requesting notice pursuant to article 37.07, section 3(g) and rules 404(b) and 609(f). *See* Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(g) (West Supp. 2002); Tex. R. Evid. 404(b) (notice of intent to introduce extraneous misconduct in State=s case-in-chief), 609(f) (notice of intent to use evidence of conviction for impeachment).

[10] The motion to sever was granted on the day jury selection began.

At the time the State filed its notice, appellant=s possession of the videotape was not an *extraneous* offense subject to either rule 404(b) or section 3(g). An extraneous offense is any act of misconduct that is not alleged in the charging instrument. *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996). Evidence that appellant possessed a videotape showing a boy under the age of eighteen masturbating was primary evidence of the offense alleged in the count quoted above. The videotape became evidence of an extraneous offense only on the day trial began, when the court granted appellant=s motion to sever the child pornography counts. Thus, the question presented is whether appellant had sufficient notice that with the child pornography counts severed out of the case, the State would introduce the videotape as punishment evidence pursuant to article 37.07, section 3.

The purpose of the section 3(g) notice requirement is to enable the defendant to prepare to meet the extraneous offense evidence offered by the State at the punishment stage. *Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.CAustin 2002, no pet.). Until the court granted the severance motion on the day trial began, appellant and his attorney had every reason to expect the State to introduce the videotape in question as evidence in its case-in-chief: appellant was under indictment for possessing child pornography in the form of videotapes, and defense counsel was given a copy of the videotape several months before trial began as part of discovery. Even before the motion to sever was granted, the State advised appellant in its response to his request for notice that it intended to introduce evidence of his possession of child pornography pursuant to rule 404(b) and section 3(g). Under the circumstances, we agree with the trial court that the defense had ample time and opportunity to prepare for the introduction of the videotape either

**14**

as primary evidence in the State=s case-in-chief or as extraneous offense evidence at the punishment stage. Even if we were to hold that article 37.07, section 3(g) was not fully satisfied, we would find from the circumstances that the admission of the videotape did not affect appellant=s substantial rights. *See id*. at 382-83; Tex. R. App. P. 44.2(b) (harmless error). Point of error one is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: October 3, 2002

Do Not Publish