# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00233-CV

---

### In re Renee Moore, Austin Police Department Custodian of Records for the Austin Police Department; and the City of Austin

---

## ORIGINAL PROCEEDING FROM BASTROP COUNTY

---

## O P I N I O N

Relators Renee Moore, Austin Police Department Custodian of Records for the Austin Police Department (APD), and the City of Austin (the City) have filed a petition for writ of mandamus challenging the trial court's denial of the City's motion to quash a subpoena duces tecum that compels production of certain police records. We will conditionally grant mandamus relief.

## BACKGROUND

The State of Texas indicted real party in interest VonTrey Jamal Clark, a former APD police officer, for the offense of capital murder. Counsel for Clark, in preparation for trial, sought to review the personnel files of five former and current APD officers who had investigated the alleged offense. The State served a subpoena duces tecum on the City, seeking

production of the records requested by the defense.[1]  The City filed a motion to quash the subpoena, arguing that the records contained confidential material that was not subject to disclosure.  *See* Tex. Loc. Gov't Code § 143.089(g) ("A fire or police department may maintain a personnel file on a fire fighter or police officer employed by the department for the department's use, but the department may not release any information contained in the department file to any agency or person requesting information relating to a fire fighter or police officer.").  However, the City agreed to "tender all confidential records to the Court to conduct an in camera inspection for *Brady / Giglio* material that may be contained in the confidential records."[2]  Following a non-evidentiary hearing, the trial court denied the motion to quash, including the City's request that the court conduct an in camera inspection of the records.  This mandamus proceeding followed.[3]

## STANDARD OF REVIEW

We apply a two-pronged test for granting mandamus relief in criminal cases: "(1) whether the relator has an adequate remedy at law to address his complaint, and (2) whether what he seeks is a ministerial act, not involving discretion or judicial decision-making."  *In re State ex rel. Mau*, 560 S.W.3d 640, 644 (Tex. Crim. App. 2018); *see also Dickens v. Court of Appeals*, 727 S.W.2d 542, 548 (Tex. Crim. App. 1987).  A relator satisfies the first prong by

---

[1] In its brief to this Court filed in response to the City's petition, the State explained that it subpoenaed the records to comply with the requirements of the criminal discovery statute, Article 39.14 of the Texas Code of Criminal Procedure, and because Clark "moved for access to those records and [the trial court] ordered the State to request them."

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

[3] The real parties in interest to this proceeding are Clark and the State.  Clark has filed a response in opposition to the mandamus petition.  The State, on the other hand, has filed a response in support of the petition, "insofar as it requires [the trial court] to review Relator's privileged files in camera before ordering any form of disclosure."

showing "that a remedy at law, though it technically exists, 'may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate.'" *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013) (quoting *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648–49 (Tex. Crim. App. 2005)). "A relator may satisfy the second prong by establishing that he has a clear right to the relief he seeks under law that is definite and unambiguous, and that 'unquestionably applies to the indisputable facts of the case.'" *Mau*, 560 S.W.3d at 644 (quoting *In re State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W. 3d 207, 210 (Tex. Crim. App. 2007)).

## ANALYSIS

### Ministerial duty

The City contends that the trial court had a ministerial duty to conduct an in camera inspection of the records prior to ordering their disclosure. Under the circumstances in this case, we agree.

A defendant does not have a "general right to discovery" of all evidence in the State's possession. *See United States v. Bagley*, 473 U.S. 667, 675 (1985) ("The prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."). However, under *Brady* and its progeny, the State's failure to disclose evidence "favorable to an accused violates due process if the evidence is material to the accused's guilt or punishment." *Ex parte Chaney*, 563 S.W.3d 239, 266

3

(Tex. Crim. App. 2018) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "It is irrelevant whether the evidence was suppressed inadvertently or in bad faith, and the defense need not request disclosure because the State's duty to disclose is an affirmative one." *Id*. (citing *United States v. Agurs*, 427 U.S. 97, 112–13 (1976)). "For purposes of a *Brady* claim, 'the State' includes the prosecution, other lawyers and employees in the prosecutor's office, and members of law enforcement connected to the investigation and prosecution of the case." *Id*. (citing *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012)). "Favorable evidence includes exculpatory evidence and impeachment evidence." *Id*. (citing *Bagley*, 473 U.S. 667, 676 (1985)). "Exculpatory evidence justifies, excuses, or clears a defendant from fault. Impeachment evidence disputes, disparages, denies, or contradicts other evidence." *Id*. (citing *Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006)). Impeachment evidence includes information that tends to discredit the testimony of witnesses for the State. *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972).

Additionally, in Texas, article 39.14 of the Code of Criminal Procedure requires the State to disclose to the defense any documents and other materials "not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state." Tex. Code Crim. Proc. art. 39.14(a). "If only a portion of the applicable document, item, or information is subject to discovery under this article, the state is not required to produce or permit the inspection of the remaining portion that is not subject to discovery and may withhold or redact that portion." *Id*. art. 39.14(c). "The state shall inform the defendant that a portion of the document, item, or information has been withheld or redacted," and upon "request of the defendant, the court shall conduct a hearing to determine whether withholding or redaction is

4

justified under this article or other law." *Id*. Moreover, even when the documents are "otherwise privileged" and thus not subject to disclosure under article 39.14(a), the State is required under article 39.14(h) to "disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." *Id*. art. 39.14(h).

Thus, under both *Brady* and article 39.14, the responsibility for disclosing evidence favorable to the defense rests with the State. However, in certain cases, the trial court also plays a critical role in the discovery process. Both the United States Supreme Court and the Court of Criminal Appeals have held that when the defense requests access to confidential or privileged information, the trial court should conduct an in camera inspection of the materials prior to ordering disclosure of the information. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60–61 (1987); *Thomas v. State*, 837 S.W.2d 106, 113–14 (Tex. Crim. App. 1992).

In *Ritchie*, the defendant in a child-sexual-assault case served a subpoena on a child-protective-services agency, seeking access to records relating to current and prior allegations of abuse that had been made against the defendant. 480 U.S. at 43. The agency refused to comply with the subpoena, claiming that the records were privileged under Pennsylvania law. *Id*. Specifically, the relevant statute provided that all reports and other information obtained during an agency investigation must be kept confidential, subject to certain exceptions including disclosure pursuant to a court order. *Id*. at 43–44. The trial court refused to order the agency to disclose the file, the case proceeded to trial, and the defendant was convicted. *Id*. at 44–45.

On appeal, the defendant argued that the failure to disclose the contents of the file violated his constitutional rights. *Id*. at 45. The Pennsylvania Supreme Court agreed and concluded that the defendant, "through his lawyer, [was] entitled to review the entire file to search for any useful evidence." *Id*. at 46. According to the Pennsylvania court, the trial court's in camera examination of the file was insufficient; the defendant "was unlawfully denied the opportunity to have the records reviewed by 'the eyes and the perspective of an advocate,' who may see relevance in places that a neutral judge would not." *Id*.

The United States Supreme Court granted certiorari "in light of the substantial and conflicting interests" of the government and the defendant. *Id*. Although the Court agreed with the Pennsylvania court that the defendant was entitled to have the trial court review the agency file for possible *Brady* material, *see id*. at 57–58, the Court disagreed with the lower court's decision "to the extent that it allows defense counsel access to the [agency] file," *id*. at 61. The Court explained that "[t]o allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information." *Id*. at 60. "If the [agency] records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse." *Id*. The Court added, "The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result." *Id*. at 61. The Court concluded that the defendant's interest "in ensuring a fair trial can be protected fully by requiring that the [agency] files be submitted only to the trial court for in camera review." *Id*. at 60. Moreover, "[a]n in camera review by the trial court will serve Ritchie's interest without destroying the

6

Commonwealth's need to protect the confidentiality of those involved in child-abuse investigations." *Id*. at 61.

The Court of Criminal Appeals reached a similar conclusion in *Thomas v. State*. In *Thomas*, the defendant was charged with capital murder. 837 S.W.2d at 107. Prior to trial, the defendant applied for a subpoena duces tecum "to compel the production from Dallas Crime Stoppers of any information pertaining to [the crime]." *Id*. at 108. The trial court quashed the subpoena "on the ground that the requested information was deemed confidential and could not be released without a specific court order." *Id*. The relevant statutes were Texas Government Code sections 414.007, which provided that Crime Stoppers records "relating to reports of criminal acts are confidential," and 414.008, which provided that "[r]ecords of . . . a local crime stoppers program concerning a report of criminal activity may not be compelled to be produced before a court or other tribunal except on the order of the supreme court." Tex. Gov't Code §§ 414.007, .008(b). The case proceeded to trial and the defendant was convicted of capital murder and sentenced to death. *Thomas*, 837 S.W.2d at 107.

On direct appeal to the Court of Criminal Appeals, the defendant argued that the failure to produce the Crime Stoppers records had violated his constitutional rights. *Id*. at 109. Following the Supreme Court's analysis in *Ritchie*, the court agreed that the failure to produce the records implicated the defendant's due-process rights under *Brady* and concluded that the defendant "has the right to *production* of crime stoppers information in possession of the local Dallas Crime Stoppers program, the Crime Stoppers Advisory Council, or the Dallas County District Attorney's Office." *Id*. at 112–14.

"However," the court added, "to allow a defendant unlimited *access* to the information would unnecessarily compromise the State's interest in fostering law enforcement

7

and its efforts to do so by protecting the identity of crime stoppers informants." *Id*. at 114. The court observed that the law-enforcement interest promoted by the crime-stoppers statute is "quite compelling" and "justifies the confidentiality provisions of the current statute." *Id*. at 113. "The problem," as the court saw it, was that "the confidentiality provisions of the crime stoppers statute, as interpreted by the trial court and as applied to the appellant, reach too far. They operate to totally bar a defendant access to information that may be material, whether in the possession of the State or any other person." *Id*. The court explained, "Denial of access to information which would have a reasonable probability of affecting the outcome of a defendant's trial abridges a defendant's due process rights and undermines the court's duty to vindicate Sixth Amendment rights. There is no interest that could be asserted by the Legislature that would be compelling enough to justify such a result." *Id*.

To balance the State's interest in law enforcement with the defendant's interest in access to information that may be material to his case, the court required the trial court to conduct an in camera inspection of the records:

> We believe that both the State's interest and the defendant's interest can be served by providing that crime stoppers information should be inspected by the trial court in camera. Neither the attorneys for the State or defendant should be present. *It will be the responsibility of the court* to determine if the produced information contains *Brady* evidence. The court must, in its sound discretion, take steps to ensure that, to the extent possible, the information remains confidential. If information is deemed material at the time it is inspected or at any future stage of the trial, it must be released to the defendant pursuant to well-settled precedent. At the conclusion of trial, the information shall be sealed and made part of the record.

*Id*. at 114 (emphasis added).

*Thomas* was not the first case in which the Court of Criminal Appeals required the trial court to conduct an in camera inspection of confidential material that was sought by a criminal defendant. *Texas Bd. of Pardons & Paroles v. Miller*, 590 S.W.2d 142 (Tex. Crim. App. 1979), was a pretrial mandamus proceeding similar to the case before us. In *Miller*, the defendant, who was charged with making obscene phone calls, obtained a subpoena duces tecum requiring the Board to produce "all files and letters concerning [the defendant] and all letters written to the Board by . . . the defendant's ex-wife," who was the complainant in the case. *Id*. at 142. The defendant argued that "the purpose of the subpoenaed documents was to show the bias and prejudice of the complaining witness." *Id*. at 143. The Board filed a motion to quash the subpoena duces tecum, citing former article 42.12 of the Code of Criminal Procedure, which provided that "[a]ll information obtained in connection with inmates of the Texas Department of Corrections . . . shall be confidential and privileged information and shall not be subject to public inspection." *Id*. The trial court overruled the motion to quash and ordered that the documents be tendered to defense counsel. *Id*. The Board then filed a petition for writ of mandamus with the Court of Criminal Appeals. *Id*.

In granting mandamus relief, the court observed that "[t]he conflict is between the Sixth Amendment right of [the defendant] to confront his accusers and the Board's statutory privilege necessary to preserve confidentiality and to encourage the frank and candid discussion necessary to its function." *Id*. Although the court agreed with the Board that "the need for confidentiality is presented here," the court would not allow "a statutory enactment to take precedence over a constitutional right." *Id*. at 144. Thus, to balance the competing interests of the Board and the defendant, the court required the trial court to conduct an in camera inspection of the requested documents:

9

> The trial court in the present case will examine the letters of [the defendant's ex-wife] to the Board in chambers. If the court is of the opinion that any of such letters would tend to show bias, prejudice or motive to testify, such letter or letters should be made available to counsel for defense for cross-examination purposes only after [the ex-wife] testifies. Making the letters available will be a matter of discretion on the part of the trial court and can be reviewed where there has been an abuse of such discretion discussed below.

*Id*. The court added, "the in-chambers inspection must be conducted in a manner conducive to 'scrupulous protection against any release or publication of material not found by the court, at that stage, . . . relevant to the issues of the trial for which it is sought.' The trial court must give due and proper regard for the Board's need for confidentiality." *Id*. (quoting *United States v. Nixon*, 418 U.S. 683, 714 (1974)).

The above and other authorities establish that when a party seeks to compel the production of confidential or privileged documents, the trial court is required to conduct an in camera inspection of those documents prior to ordering their disclosure.[4] *See Ritchie*, 480 U.S. at 60–61; *Thomas*, 837 S.W.2d at 114; *Miller*, 590 S.W.2d at 144; *see also Nixon*, 418 U.S. at 713–14 (approving trial court's procedure of ordering "an in camera examination of the subpoenaed material" that trial court considered to be "presumptively privileged"); *In re State*, Nos. 09-15-00192-CR & 09-15-00193-CR, 2015 Tex. App. LEXIS 12083, at *7 (Tex. App.—Beaumont Nov. 25, 2015, orig. proceeding) (mem. op., not designated for publication) (conditionally granting mandamus relief when trial court ordered State to "produce a recording of a drug transaction of a confidential informant" in compliance with disclosure requirements of

---

[4] We note that in civil cases, the Texas Supreme Court has conditionally granted mandamus relief when the trial court has failed to conduct an in camera inspection of allegedly confidential or privileged records and the records are the only evidence to substantiate the claim of privilege. *See, e.g.*, *In re M-I L.L.C.*, 505 S.W.3d 569, 579–80 (Tex. 2016) (orig. proceeding); *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986) (per curiam) (orig. proceeding).

article 39.14, "without first examining the recording in camera and determining whether an exception to the [Rule 508 informant's identity] privilege applies"). Thus, the question in this case is whether the personnel files subject to the subpoena contain confidential or privileged information.

The statute at issue here is Section 143.089(g) of the Texas Local Government Code, which provides that "[a] fire or police department may maintain a personnel file on a fire fighter or police officer employed by the department for the department's use, but the department may not release any information contained in the department file to any agency or person requesting information relating to a fire fighter or police officer." Tex. Loc. Gov't Code § 143.089(g). This Court and others have characterized Section 143.089(g) personnel files as "confidential and not subject to disclosure," "privileged," "not available for public inspection," and not to be released "to anyone under any circumstances." *Canada v. State*, 547 S.W.3d 4, 20 (Tex. App.—Austin 2017, no pet.); *In re Jobe*, 42 S.W.3d 174, 181 (Tex. App.—Amarillo 2001, orig. proceeding); *City of San Antonio v. San Antonio Express-News*, 47 S.W.3d 556, 562 (Tex. App.—San Antonio 2000, pet. denied); *Ealoms v. State*, 983 S.W.2d 853, 859 (Tex. App.—Waco 1998, pet. ref'd); *City of San Antonio v. Texas Att'y Gen.*, 851 S.W.2d 946, 952 (Tex. App.—Austin 1993, writ denied). Moreover, the parties do not dispute that the personnel files subject to the subpoena include confidential or privileged material. Accordingly, on this record, we conclude that the trial court has a ministerial duty to conduct an in camera inspection of the subpoenaed documents prior to determining what, if any, portion of them should be disclosed. *See Ealoms*, 983 S.W.2d at 859 ("Here, there is no question that the [Section 143.089(g)] file requested by Ealoms is privileged by statute. Thus, in determining Ealoms' right to the privileged material, the court was obligated to conduct an in camera review

11

of the evidence."). *Cf. Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 119 (Tex. App.—Austin 2003, no pet.) (observing that in context of Public Information Act cases, "the contents of a subsection (g) file are always subject to court review by in camera inspection to determine whether it contains information that should have been forwarded to a subsection (a) file and made subject to disclosure").

**Adequate remedy at law**

It is well established that "an appeal may become an inadequate remedy from pretrial discovery orders if a relator could not receive relief on appeal." *Dickens*, 727 S.W.2d at 550 (Tex. Crim. App. 1987); *see also Miller*, 590 S.W.2d at 143 (agreeing with relator that "the issues raised by the service of a subpoena duces tecum in the context of a criminal trial and the [relator's] assertion of [a] statutory privilege . . . are such that any legal decision affecting the privilege is not susceptible to meaningful review through the normal criminal appellate processes"). In this case, the City, similar to the Board in *Miller*, does not have an adequate remedy at law. Once the Section 143.089(g) files are disclosed, the disclosure cannot be undone, and at the very least, Clark's attorneys will have access to the confidential files. However, Clark contends that "there is an easy remedy for protecting that confidentiality: a protective order." We disagree. As the United States Supreme Court observed in *Ritchie*, if confidential records "were made available to defendants, *even through counsel*, it could have a seriously adverse effect" on the City's interest in maintaining the confidentiality of the files. *See Ritchie*, 480 U.S. at 60 (emphasis added). Thus, absent an in camera inspection of the files, a protective order would be an inadequate remedy for the City.

**Procedural objections**

Finally, we address the procedural objections to granting mandamus relief that Clark has raised in his response in opposition to the City's petition. Clark asserts that we should deny mandamus relief because: (1) the mandamus record is inadequate; (2) the dispute hinges on "key facts omitted from the City's petition"; (3) the City's request for extraordinary relief was "untimely"; and (4) "mandamus was pursued without first giving the trial court an opportunity to hear why a protective order would be inadequate." None of these contentions have merit.

The rules require that the relator must file with its mandamus petition: "(1) a certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding; and (2) a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered in evidence, or a statement that no testimony was adduced in connection with the matter complained." Tex. R. App. P. 52.7(a). Here, the City filed with its petition certified copies of the indictment, the subpoena, its motion to quash the subpoena, and the trial court's order denying the motion to quash. No other documents were necessary to our disposition of this mandamus proceeding.[5] Moreover, it is undisputed that no testimony was taken and no evidence was admitted at the hearing on the City's motion to quash. Therefore, the City was not required to provide a reporter's record of that hearing.

Clark also contends that the City omitted "key facts" from its petition. We disagree. The "key facts" are that Clark sought the production of records that contain confidential information, the City requested that the district court conduct an in camera

---

[5] We also note that if Clark believed that additional materials were necessary, the rules allow for supplementation of the record by the relator or "any other party." *See* Tex. R. App. P. 52.7(b). However, Clark has chosen not to supplement the record.

inspection of those records prior to ordering their disclosure, and the district court denied the City's request. The City included those facts in its petition.

We also disagree with Clark's assertion that the City's request for mandamus relief was untimely. Mandamus is an equitable remedy designed to "aid the diligent and not those who slumber on their rights," and an unreasonable delay in filing a mandamus petition may be grounds for denying relief. *See Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993). However, in this case, the City filed its mandamus petition less than two months after the hearing at which the trial court orally denied the motion to quash and only one week after the trial court entered its written order denying the motion. This is not the type of delay that justifies the denial of mandamus relief. *See In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 900 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) (concluding that seven-week delay in filing mandamus petition did not justify denial of mandamus relief). *Cf. In re Xeller*, 6 S.W.3d 618, 624 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (sixteen-month delay justified denial of mandamus relief); *In re State ex rel. Hilbig*, 985 S.W.2d 189, 192 (Tex. App.—San Antonio 1998, orig. proceeding) (ten-month delay justified denial of mandamus relief); *Bailey v. Baker*, 696 S.W.2d 255, 256 (Tex. App.—Houston [14th Dist.] 1985, orig. proceeding) (concluding that four-month delay was unreasonable when relator waited to file mandamus petition until approximately two weeks prior to trial). We also cannot conclude that Clark has been harmed by the purported delay in seeking mandamus relief. *See In re Mabray*, 355 S.W.3d 16, 22–23 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (requiring showing of harm to real party in interest before mandamus relief may be denied on ground of unreasonable delay); *In re Hinterlong*, 109 S.W.3d 611, 621 (Tex. App.—Fort Worth 2003, orig. proceeding) (same).

Finally, there is no merit to Clark's assertion that the City should have asked the trial court to enter a protective order before seeking mandamus relief. Entering any such order without first conducting an in camera inspection would have been inadequate to protect the confidentiality of the requested records. As the City observes, "[e]ven the most restrictive protective order would permit attorneys for the State and the defense to review the confidential records." Thus, an in camera inspection is necessary to ensure that the parties review only the records that are required to be disclosed under *Brady* and article 39.14. *After* the trial court has conducted an in camera inspection of the records, then it can enter a protective order for any material that it orders to be produced.

## CONCLUSION

We conclude that the trial court has a ministerial duty to conduct an in camera inspection of the Section 143.089(g) files before determining what, if any, portion of them should be disclosed and that the City lacks an adequate remedy at law from the trial court's failure to do so. Accordingly, the City's petition for writ of mandamus is conditionally granted. *See* Tex. R. App. P. 52.8(c). The writ will issue only if the trial court fails to (1) vacate its order denying the City's motion to quash; (2) conduct an in camera inspection of the requested records consistent with the procedures described by the Court of Criminal Appeals in *Thomas* and *Miller*, *supra*; and (3) enter an order quashing the subpoena to the extent that the subpoena compels the production of any materials that the trial court determines are not required to be produced under *Brady* and article 39.14.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Filed:  July 11, 2019